Patrick LONGBEHN, Appellant,

v.

Robin SCHOENROCK, Respondent.

No. A06–1021.

Court of Appeals of Minnesota.

Feb. 6, 2007.

Thomas M. Skare, Cloquet, MN, for appellant.

James W. Balmer, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; SHUMAKER, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

A jury found that respondent Robin Schoenrock defamed appellant Patrick Longbehn, but the district court entered judgment as a matter of law in favor of respondent. Appellant argues that the district court erred by concluding that (1) respondent's statement referring to appellant as "Pat the Pedophile" was not defamatory per se; (2) the evidence was insufficient to establish a causal link between

respondent's statement and any special and general damages; (3) the evidence was legally insufficient to sustain the jury's punitive-damage award; and (4) the evidence was insufficient to sustain the amount that the jury awarded for general damages. Because we conclude that (1) referring to an individual as a "pedophile" is defamatory per se; (2) the district court did not err by entering judgment in favor of respondent on the issues of special and punitive damages; (3) the district court erred by concluding that appellant was required to establish a causal link between respondent's defamatory publication and general damages; and (4) the evidence does not support the amount that the jury awarded for general damages, we affirm in part, reverse in part, and remand.

## FACTS

Appellant started working for the City of Moose Lake as a police officer in May of 2000, when he was 34 years old. Shortly thereafter, appellant started a romantic relationship with an 18–year–old woman.

Two of appellant's acquaintances, Brian Collins and Charles Wilson, attended a party in Duluth on the evening of December 31, 2000. Collins brought to the party two teenaged girls, one of whom was respondent's stepdaughter. Wilson testified that as he was driving home from the party with respondent's stepdaughter, respondent and Wilson became engaged in a cell-phone conversation during which respondent warned Wilson that he intended to contact various law-enforcement agencies and/or officers if Wilson did not bring his daughter home. According to Wilson, respondent stated that one of the law-enforcement officers he intended to contact was "Pat the Pedophile." Wilson testified that this was the first time he had ever heard anyone refer to appellant by that name. Collins later told appellant

that Wilson had referred to appellant as "Pat the Pedophile." Respondent denies that he made the statement.

In January 2001, the City of Moose Lake chose not to retain appellant as a police officer after his probationary period expired. The Moose Lake police chief testified that appellant was terminated because people in the community thought he was overzealous and overbearing. The chief noted that some members of the community referred to appellant as "Pat the Pedophile" because of his relationship with the 18–year–old woman—although no one actually believed he was a pedophile. The chief admitted that the fact that appellant was known by this offensive nickname was one of the factors that influenced the city's decision to terminate appellant. The chief testified that the name reflected that the community had lost confidence in appellant, and that "his credibility was no longer there as far as the public image was concerned, right or wrong on his part." The chief testified that the first time he heard the name was from the principal or guidance counselor at the area high school and that many of the kids in the community referred to appellant by that name. But the police chief never heard respondent call appellant a pedophile or use the name "Pat the Pedophile." Similarly, appellant never personally heard respondent refer to him as "Pat the Pedophile."

After appellant was terminated, he exerted little effort trying to find another job as a police officer. Appellant did find employment with the Minnesota Department of Corrections, but he was discharged for assaulting his girlfriend, a co-employee, before completing his training. After this incident, appellant's girlfriend obtained an order for protection against him, and he checked himself into a psychiatric facility.

Appellant initially commenced this case against a number of defendants, including the chief of police and respondent. He alleged various tort and employment claims. The district court dismissed the action with prejudice. This court reversed the judgment of dismissal as to appellant's defamation claim against respondent, and remanded for further proceedings. *Longbehn v. City of Moose Lake*, No. A04–1214, 2005 WL 1153625 (Minn.App. May 17, 2005).

After trial following the remand, the jury found that (1) respondent called appellant "Pat the Pedophile" but did not accuse appellant of actually being a pedophile; (2) respondent's defamatory publication was made under circumstances that made it negligent; (3) respondent's publication caused appellant emotional distress so severe that no reasonable person could be expected to endure it; and (4) clear and convincing evidence established that respondent acted in deliberate disregard for appellant's rights and safety. The jury awarded appellant $230,000 for past and future harm to reputation, mental distress, humiliation, and embarrassment, as well as $3,000 for future health-care expenses. In addition, the jury awarded appellant $90,000 for past and future wage loss and $250,000 for punitive damages.

Respondent moved for judgment as a matter of law (JMOL). The district court granted respondent's motion and directed entry of judgment in favor of respondent. In its order, the district court concluded that (1) respondent's statement was not defamatory per se; (2) there was no evidentiary basis for the jury to find a causal link between respondent's statement and any special or general damages; (3) the evidence was insufficient to sustain the jury's punitive-damage award; and (4) the evidence was insufficient to sustain the

amount the jury awarded for general damages. This appeal follows.

## ISSUES

I. Did the district court err by concluding that the challenged statement was not defamatory per se?

II. Did the district court err by granting judgment as a matter of law on the issues of special, general, and punitive damages?

III. Did the district court err by concluding that the evidence did not support the amount the jury awarded for general damages?

## ANALYSIS

### I

■ Appellant argues that the district court erred by concluding that respondent's statement was not defamatory per se. The application of law to established facts is a question of law, which this court reviews de novo. *Morton Bldgs., Inc., v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992); *see also* Restatement (Second) of Torts § 615(1) (1977) (stating that it is for the court to decide whether words are actionable per se).

■ "[D]efamatory per se defines a rule of damages, not of defamatory meaning." *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 307 (Minn. App.2001). Statements are defamatory per se if they falsely accuse a person of a crime, of having a loathsome disease, or of unchastity, or if they refer to improper or incompetent conduct involving a person's business, trade, or profession. *Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn. 1977); Restatement (Second) of Torts § 570 (1977). With regard to false accusations of a crime, "the words need not carry upon their face a direct imputation of crime." *Larson v. R.B. Wrigley Co.*, 183

Minn. 28, 29, 235 N.W. 393, 394 (1931). "It is sufficient if the words spoken, in their ordinary acceptance, would naturally and presumably be understood, in the connection and under the circumstances in which they are used, to impute a charge of crime." *Id.* In accordance with this principle, courts have held that statements that impute serious sexual misconduct are defamatory per se. *Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 25 n. 3 (Minn.1996) (citing *Baufield v. Safelite Glass Corp.*, 831 F.Supp. 713, 717 (D.Minn. 1993)); Restatement (Second) of Torts § 574 cmt. d (1977) (stating that statements that are actionable because they impute serious sexual misconduct may also be actionable under the rule that statements that impute a crime are defamatory per se).

■ Here, the jury found that respondent called appellant "Pat the Pedophile," but that he did not accuse appellant of being a pedophile. Because there was no accusation, the district court concluded that the statement was not defamatory per se. But the test is not whether the speaker intended to make an accusation, but whether a reasonable person under similar circumstances would understand the statement as making an accusation or imputing criminal or serious sexual misconduct to another. *See Anderson*, 262 N.W.2d at 372 ("[T]he test [is] whether a reasonable person would believe the statement to be defamatory.").

■ With this rule in mind, we hold that in almost every circumstance a reasonable listener would believe that calling a person a pedophile imputes serious sexual misconduct or criminal activity to that person. It is, therefore, defamatory per se. This is

especially true where, as in this case, the listener had no prior knowledge that the offensive name was a nickname that the community commonly used to signify its displeasure with appellant—a local police officer dating a much younger woman. Furthermore, respondent has cited no case, and our research has revealed none, holding that calling a person a pedophile could be understood by a reasonable person to be anything but defamatory per se.

## II

■ Appellant argues that the district court erred by granting judgment as a matter of law on the issues of special, general, and punitive damages.[1] The district court's grant of JMOL is a question of law subject to de novo review. *Huyen v. Driscoll*, 479 N.W.2d 76, 78 (Minn.App. 1991), *review denied* (Minn. Feb. 10, 1992).

■ JMOL is appropriate when a jury verdict has no reasonable support in fact or is contrary to law. *Diesen v. Hessburg*, 455 N.W.2d 446, 452 (Minn.1990). Courts "must view the evidence in the light most favorable to the nonmoving party and determine whether the verdict is manifestly against the entire evidence or whether despite the jury's findings of fact the moving party is entitled to judgment as a matter of law." *Navarre v. S. Washington County Schs.*, 652 N.W.2d 9, 21 (Minn.2002). The jury's verdict will not be set aside "if it can be sustained on any reasonable theory of the evidence." *Pouliot v. Fitzsimmons*, 582 N.W.2d 221, 224 (Minn.1998).

■ To establish a claim for defamation, the plaintiff must prove "that a statement was false, that it was communi-

---

1. The parties characterized the motion as one for JNOV. The 2006 amendments to the Minnesota Rules of Civil Procedure changed the characterization of the motion from JNOV to judgment as a matter of law (JMOL). This change did not alter the substantive practice relating to these motions. *See* Minn. R. Civ. P. 50.02 (2006) advisory comm. cmt.

cated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation and to lower him in the estimation of the community." *Richie*, 544 N.W.2d at 25 (quotation omitted). The purpose of a defamation action is to compensate a private citizen for wrongful injury to his or her reputation. *Id.* at 28; *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348–49, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974) (stating that states have a strong and legitimate interest in compensating private individuals for harm to reputation). When a statement is defamatory per se, as is the case here, the statement is "actionable without proof of special damage." *Anderson*, 262 N.W.2d at 372; Restatement (Second) of Torts § 574 (1977) ("One who publishes a slander that imputes serious sexual misconduct to another is subject to liability to the other without proof of special harm."). In addition, general damages are presumed, and thus a plaintiff may recover without any proof that the defamatory publication caused him or her actual harm. *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn. 1987). Finally, when a statement is defamatory per se "punitive damages are recoverable without proof of actual damages." *Anderson*, 262 N.W.2d at 372 (citing *Loftsgaarden v. Reiling*, 267 Minn. 181, 126 N.W.2d 154 (1964)).

■ "Special harm ... is the loss of something having economic or pecuniary value." Restatement (Second) of Torts § 575 cmt. b (1977). It may be "a loss of [a] presently existing advantage, as a discharge from employment," or "a failure to realize a reasonable expectation of gain, as a denial of employment." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 258–59 (Minn.1980) (quotation omitted). General damages are recoverable for injury to the plaintiff's "reputation, his wounded feelings and humiliation, ... as well as

estimated future damages of the same kind." *Richie*, 544 N.W.2d at 27 (quotation omitted). Punitive damages are "inflicted wholly with a view to punish, and make an example of the defendant[ ]." *Loftsgaarden*, 267 Minn. at 182–83, 126 N.W.2d at 155 n. 2 (quotation omitted).

### Special Damages

■ Here the jury awarded appellant special damages in the aggregate amount of $90,000 for past and future wage loss. But the district court concluded that the evidence was legally insufficient to prove that respondent's statement was the legal cause of any actual and special pecuniary loss. Even after reviewing the evidence in the light most favorable to appellant, we agree with the district court.

■ A plaintiff may recover special damages if he or she proves that the defamatory publication is the legal cause of any actual and special pecuniary loss. *Stuempges*, 297 N.W.2d at 258–59; Restatement (Second) of Torts § 622 (1977) ("One who is liable for ... a slander actionable per se ... is also liable for any special harm legally caused by the defamatory publication."). A defamatory publication actionable per se is the legal cause of special harm if "it is a substantial factor in bringing about the harm." Restatement (Second) of Torts § 622A(a) (1977).

Here, the record shows that respondent used the offensive nickname on one isolated occasion. There is no evidence that respondent originated the name or participated in its dissemination so as to justify imposing liability on him for any subsequent publication by others. In fact, the record shows that at the time of the incident, appellant was commonly known in the Moose Lake community by this derogatory nickname.

Next, the record indicates that the city's decision to terminate appellant was based

on his conduct and that respondent's publication was not a substantial factor in bringing about appellant's termination. The chief of police never heard respondent make the defamatory publication. The chief testified that although the name was a reflection of appellant's loss of credibility in the community, the name was not the reason for the city's action. According to the chief, the factor playing the most significant role in the decision to terminate appellant as a police officer was the community's perception that appellant was overzealous and overbearing.

Finally, there is no evidence that respondent's publication caused appellant any loss of prospective employment. Appellant testified that after the city terminated his employment he did not actively seek employment as a police officer. But appellant presented no evidence at trial establishing that respondent's publication inhibited him from fulfilling his duty to mitigate damages or prevented him from realizing an expected gain. Furthermore, in light of appellant's termination from the department of corrections for assaulting his girlfriend and the related OFP, respondent's defamatory publication cannot reasonably be viewed as the legal cause of any future difficulty appellant may encounter in trying to obtain employment as a police officer. Based on the evidence submitted at trial, the district court did not err in concluding that respondent's publication was not the legal cause of any special harm appellant claims to have sustained.

### General Damages

■ The jury awarded appellant $230,000 for past and future harm to reputation, mental distress, humiliation, and embarrassment, as well as $3,000 for future health-care expenses. The district court concluded that the evidence was legally insufficient to establish a causal connection between respondent's statement and these general damages. But because respondent's statement is defamatory per se, general damages are presumed and appellant may recover without any proof of actual harm; accordingly, the district court erred with regard to this issue. *Becker*, 401 N.W.2d at 661.

### Punitive Damages

The jury awarded appellant $250,000 for punitive damages. The district court concluded that the evidence was legally insufficient to find that respondent acted in deliberate disregard for appellant's rights and safety. The district court also determined that the concept of punitive damages was not applicable to this case. Even after viewing the evidence in the light most favorable to appellant, we agree.

■ In defamation cases, the policy behind punitive damages is to "deter false, malicious, and provocative attacks on a person's reputation." *Loftsgaarden*, 267 Minn. at 182–83, 126 N.W.2d at 154–55. In Minnesota, punitive damages "shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn.Stat. § 549.20, subd. 1(a) (2004).

> A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and: (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury ...; or (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn.Stat. § 549.20, subd. 1(b)(1), (2) (2004).

While this court's conclusion that respondent's statement was defamatory per se results in general damages being presumed, it does not necessarily follow that every defamation per se claim also warrants punitive damages. The propriety of punitive damages must be determined on a case-by-case basis. To support an award of punitive damages, there must be clear and convincing evidence establishing that respondent acted in conscious or intentional disregard for the high probability that his statement would cause appellant harm. In this case, that evidence is lacking.

The record shows that respondent made the defamatory publication while identifying a particular law-enforcement officer he would call for assistance in securing his stepdaughter's safe return home. It appears that respondent used the term because he believed that appellant was commonly known by that name among the area's youth. Based on the record, this belief was reasonable. Analyzing the statement in its proper context, the evidence does not support a finding that respondent was trying to malign appellant. The jury's findings that respondent did not accuse appellant of being a pedophile and that he acted under circumstances that made his publication negligent comport with this assessment of the record. Based on the above reasoning, we conclude that the district court did not err in setting aside the award of punitive damages.

### III

Appellant argues that the district court erred by concluding that the evidence did not support the amount the jury awarded for general damages. A reviewing court should not set aside a jury verdict on damages "unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Raze v. Mueller,* 587 N.W.2d 645, 648 (Minn.1999) (quotation omitted). But the district court "has broad discretion in determining whether to set aside a verdict as being excessive and should not hesitate to do so where it feels the evidence does not justify the amount." *Mrozka v. Archdiocese of St. Paul & Minneapolis,* 482 N.W.2d 806, 813 (Minn.App. 1992), *review denied* (Minn. May 24, 1992). The district court's determination will not be disturbed absent a clear abuse of discretion. *Dallum v. Farmers Union Cent. Exch. Inc.,* 462 N.W.2d 608, 614 (Minn. App.1990), *review denied* (Minn. Jan. 14, 1991).

The presumption of general damages in cases of defamation per se affords little control by the court over the jury's assessment of the appropriate amount of damages. *Stuempges,* 297 N.W.2d at 259; Restatement (Second) of Torts § 621 cmt. a (1977). But in the absence of proof, general damages are limited to harm that "would normally be assumed to flow from a defamatory publication of the nature involved." Restatement (Second) of Torts § 621 cmt. a (1977).

In *Gertz,* the Supreme Court stated:

The common law of defamation is an oddity of tort law, for it allows recovery of ... damages without evidence of actual loss.... Juries may award substantial sums as compensation for supposed damage to reputation without any proof that such harm actually occurred. The largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms.... [T]he States have no substantial interest in securing for plaintiffs ... gratuitous

awards of money damages far in excess of any actual injury.

418 U.S. at 349, 94 S.Ct. at 3011–12.

■ Although the Minnesota Supreme Court has held that *Gertz*'s constitutional protections do not apply to a private plaintiff suing a private defendant on an issue not of public concern, *Richie*, 544 N.W.2d at 28, we find *Gertz*'s proposition that states have no interest in securing gratuitous awards far exceeding actual injury to be persuasive. Based on the record in this case, including the context in which respondent made the defamatory statement, we conclude that $233,000 in general damages far exceeds the amount of past and future harm to appellant's reputation, mental distress, humiliation, and embarrassment that would normally flow from a publication of this kind. Accordingly, we remand for a new trial on general damages.

### DECISION

Because we conclude that (1) respondent's statement was defamatory per se; (2) the district court did not err by granting judgment as a matter of law in favor of respondent on the issues of special and punitive damages; (3) the district court erred by concluding that the evidence was insufficient to establish a causal relationship between respondent's defamatory publication and general damages; and (4) the district court did not err by concluding that the evidence does not support the amount the jury awarded for general damages, we affirm in part, reverse in part, and remand.

**Affirmed in part, reversed in part, and remanded.**