*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1396**

Kim T. Poole,
Appellant,

vs.

Soo Line Railroad Company d/b/a Canadian Pacific,
Respondent.

**Filed June 13, 2016
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-CV-13-22086

Randal W. LeNeave, Richard L. Carlson, Hunegs, LeNeave & Kvas, P.A., Wayzata, Minnesota (for appellant)

Timothy R. Thornton, Jonathan P. Schmidt, Briggs and Morgan, P.A., Minneapolis, Minnesota; and

Sally J. Ferguson, Noelle L. Schubert, Allison V. LaFave, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

In this case under the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60 (2012), appellant challenges the district court's denial of his requests for judgment as a matter of law and a new trial on the issue of whether a fellow railroad employee was acting within the scope of his employment when he injured appellant. We affirm.

**FACTS**

In December 2013, appellant Kim T. Poole sued respondent Soo Line Railroad Company doing business as Canadian Pacific (Soo Line) for negligence under the Federal Employers' Liability Act (FELA). Poole's allegations arose out of an incident that occurred on May 3, 2012, while he was working as a signal maintainer for Soo Line. Poole was part of a Soo Line crew assigned to remove a temporary section of rail at a crossing and replace it with permanent rail. Poole was responsible for taking the railroad crossing at that location out of service. If the railroad crossing is not out of service before a section of rail is removed, the removal of the rail from the tracks breaks an electric circuit between the rail and a nearby bungalow, causing the crossing gates to lower and disrupt traffic. Poole was not allowed to take the crossing out of service without first contacting a dispatcher at Soo Line.

William Schmidt, a section foreman at Soo Line, was in charge of the crew assigned to change the rail. Poole and Schmidt had a friendly working relationship. Schmidt and other crew members were responsible for physically removing the rail. After Schmidt and his crew had prepared the rail for removal, it began to rain. Schmidt and his crew waited

out the rain for approximately 30 to 45 minutes. When the rain stopped, they went back to removing the rail. A member of Schmidt's crew drove a backhoe up to the tracks to take out the rail.

When Poole saw the backhoe pull up to the tracks, he attempted to contact the dispatcher to get permission to take the crossing out of service, but Poole was unable to reach the dispatcher. Around this time, Poole noticed Schmidt knocking the wires off of the rail that was to be removed. This broke the circuit and caused a crossing gate to drop onto Schmidt's company truck. The crossing gate was stuck on the truck and could not reach a 45-degree angle, which caused its motor to run continuously. Being stuck in this position for an extended period of time can burn out the crossing gate's motor and prevent the gate from rising again until the motor is replaced.

Immediately after the crossing gates dropped, Poole walked over to Schmidt to talk to him about the gates. Poole said something to Schmidt about the crossing gates, and Schmidt swung around and said, "What do you mean you haven't got the crossing out of service yet?" Schmidt was holding a shovel when he swung around, and the shovel struck Poole's head. The impact knocked Poole's hardhat off of his head. Following the incident, Schmidt returned to work, and Poole left the worksite.

Later that afternoon, Robert Otis, a superintendent of engineering at Soo Line, held a meeting regarding the incident. Poole, Schmidt, and their supervisors were present. Schmidt apologized for hitting Poole with the shovel, and the two shook hands.

A few weeks later, Otis conducted a hearing on behalf of Soo Line regarding the incident. Poole, Schmidt, and their supervisors testified. During the hearing, Otis asked

3

Schmidt if he had complied with a Soo Line rule that provides, "[e]mployees must not enter into altercations with each other, play practical jokes, or wrestle while on duty or on railroad property." Schmidt answered, "[w]ell, that's misleading. I did not—I actually was joking. I don't know how to word it. But what happened was my fault. I hit—swung the shovel jokingly around and hit someone. I mean, I can't deny that." After the investigation of the incident, Soo Line disciplined Schmidt for violating certain Soo Line rules, including the altercation rule.

Poole's FELA suit was tried to a jury over the course of six days. After Soo Line rested its case, Poole moved for a directed verdict on the issue of Schmidt's negligence, arguing that "[t]here is no evidence that [the incident] was intentional," "[t]here is no evidence that it was horseplay," and that "all the evidence, the overwhelming evidence is that this was in the course and scope—or the scope of employment." The district court denied Poole's motion.

The jury returned a special verdict finding that Schmidt was not acting in the scope of his employment at the time of the incident. Poole moved for judgment as a matter of law (JMOL) on the scope-of-employment issue and in the alternative for a new trial on the ground that the jury's finding on that issue was not justified by the evidence or was contrary to law.[1]

---

[1] Poole also moved for a new trial based on the district court's "Scope of Employment" jury instruction and its submission of the scope-of-employment question to the jury. Poole does not appeal the district court's denial of his motion for a new trial on these grounds.

The district court denied Poole's motions for JMOL and a new trial. The district court reasoned that because "[t]here is overwhelming evidence that when Mr. Schmidt hit Mr. Poole with the shovel, Mr. Schmidt was not acting in furtherance of Soo Line's business," and thus Schmidt was not acting in the scope of his employment at the time of the incident. The district court similarly found that the preponderance of the evidence shows that Schmidt "was not attempting to benefit Soo Line or further Soo Line's business when he struck Mr. Poole with the shovel" and thus that the jury's finding that Schmidt was not acting in the scope of his employment was justified by the evidence.

Poole appeals.

## DECISION

FELA provides that:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . .

45 U.S.C. § 51.

Because FELA limits an employer's liability to instances where an employee is injured by the negligent conduct of another employee, courts have read into FELA the requirement that both employees be acting within their respective scopes of employment at the time of an injury for the railroad employer to be liable. *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 83 (2d Cir. 1989). "[N]o liability attaches when an employee acts entirely upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer." *Id.* (quotation omitted). Thus, the dispositive issue in this case is

5

whether Schmidt was attempting to further Soo Line's interests when he swung his shovel and hit Poole. *See id.* at 84 (describing the key scope-of-employment inquiry as whether an employee was attempting to further the employer's interests).

"Normally, whether an employee is acting within the scope of employment is a question to be resolved by the jury from all the surrounding circumstances." *Id.* (quotation omitted). This is especially true in negligence actions brought under FELA, "where the role of the jury is significantly greater than in common law negligence actions, and where the jury's right to pass upon the question of the employer's liability must be most liberally viewed." *Id.* (quotations omitted). "Consequently, the scope of employment issue may be taken from the jury only when it is clear that reasonable men could not reach differing conclusions." *Id.* (quotation omitted).

## I.

If a party moves for JMOL after a jury returns a verdict, the district court may "(1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of judgment as a matter of law." Minn. R. Civ. P. 50.02. "The jury's verdict will not be set aside if it can be sustained on any reasonable theory of the evidence." *Longbehn v. Schoenrock*, 727 N.W.2d 153, 159 (Minn. App. 2007) (quotation omitted). "Courts must view the evidence in the light most favorable to the nonmoving party and determine whether the verdict is manifestly against the entire evidence or whether despite the jury's findings of fact the moving party is entitled to judgment as a matter of law." *Id.* (quotation omitted). "JMOL is appropriate when a jury verdict has no reasonable support in fact or is contrary to law." *Id.* Construing the evidence in the light most favorable to the verdict "does not mean that

6

[courts] are precluded from actually examining the evidence to assess whether there is a sufficient basis for the jury's finding." *Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 229 (Minn. 2010).

An appellate court reviews a district court's decision to grant or deny JMOL de novo. *See Longbehn*, 727 N.W.2d at 159 (applying de novo standard in reviewing grant of JMOL). We therefore independently determine whether there is "any competent evidence reasonably tending to support" the jury's verdict, without deferring to the district court's ruling. *Janke v. Duluth & Ne. R.R. Co.*, 489 N.W.2d 545, 548 (Minn. App. 1992), *review denied* (Minn. Oct. 28, 1992).

Poole contends that "the evidence supports only one reasonable conclusion—that Schmidt's act, although misguided and overzealous, was done in furtherance of his employment and out of frustration with the work." He argues that "there was no evidence presented at trial that supports a reasonable conclusion that Schmidt's conduct was motivated by personal amusement, horseplay, animus or any other act taking him outside the scope of his employment."

We begin our analysis of Poole's argument by noting the particular circumstances of this case. This is not a case in which the challenged conduct is that of a supervisor who, by his own admission, was disciplining an employee or attempting to control the work of an employee. Such circumstances may tend to directly establish that challenged conduct was in furtherance of the employer's interests and therefore in the scope of employment. *See Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 811, 819 (7th Cir. 1985) (concluding that a railroad's vicarious liability was plain with regard to supervisors' assaults of an

7

employee stemming from exasperation with the employee's job performance). Here, however, Schmidt was not Poole's supervisor and there is not an admission that he swung the shovel to discipline Poole or to improve Poole's job performance. Nor is this a case in which the challenged conduct occurred during the performance of a task that furthered the goals or interests of an employer. For example, if Schmidt had accidentally hit Poole with the shovel while digging dirt off of railroad ties in preparation for replacement of the rail, that would tend to show that the challenged conduct was in furtherance of Soo Line's interests and therefore within the scope of employment. *See id.* at 811, 819 (noting that the "railroad's liability would be even plainer" if an employee who struck another employee while swinging a sledgehammer at a pin stuck on a locomotive being repaired was merely careless). But there is not a basis to conclude that Schmidt swung the shovel as part of the employment task at hand.

The relevant inquiry is whether the act of swinging the shovel furthered Soo Line's interests. The only evidence of Schmidt's purpose for swinging the shovel was his testimony that he did so jokingly. At the Soo Line hearing in May 2012, Schmidt stated "I actually was joking. I don't know how to word it. But what happened was my fault. I hit—swung the shovel jokingly around and hit someone."[2] When asked if this was still his position at trial, Schmidt answered "Yes." Other witnesses testified at trial that Schmidt had described his swinging the shovel around as something done jokingly or in a joking manner. Acceptance of Schmidt's testimony that he jokingly swung the shovel is

_____

[2] The transcript of the Soo Line hearing was received as evidence at trial.

inconsistent with a conclusion that he was attempting to further his employer's interests and therefore acting within the scope of his employment.

Given the circumstances in this case, the jury could have rejected Schmidt's explanation for his action. The jury could have concluded that Schmidt acted out of loyalty to Soo Line and a desire to ensure that he and his co-workers completed their work in a manner that met Soo Line's expectations. However, the jury's verdict indicates that it credited Schmidt's testimony, and "[i]t is the jury's function to determine credibility." *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982). "Because it is the jury's function to determine credibility, review of a jury verdict is even more limited when the decision rests upon weighing the credibility of witnesses." *Covey v. Detroit Lakes Printing Co.*, 490 N.W.2d 138, 141 (Minn. App. 1992). We defer to the jury's implicit determination that Schmidt's proffered motivation for his action was credible.

Poole contends that "Schmidt's testimony that he 'swung around jokingly' because he 'wasn't happy with the fact that [the crossing] wasn't out of service' is a non sequitur." Poole essentially argues that the "jokingly" language that Schmidt used at the Soo Line hearing and affirmed at trial does not accurately describe his actual motivation for swinging the shovel at Poole, which was frustration with the progress of the removal of the rail on the day of the incident. But the jury weighed the evidence and its verdict indicates that it determined that Schmidt's "jokingly" language fairly characterized his motivation in swinging the shovel.

Poole heavily relies on *Lancaster* and *Taylor v. Burlington N. R.R. Co.*, 787 F.2d 1309 (9th Cir. 1986). Poole notes that "*Lancaster* and *Taylor* make clear that the key

9

inquiry into whether an employee is acting within the scope of his or her employment is motivation," and he formulates the relevant inquiry as follows: "Is the employee acting due to issues involving the workplace or is the employee acting due to some personal reason or gain?" But Poole's formulation of the relevant standard is broader than the holdings of *Lancaster* and *Taylor*. Although the federal circuit courts in *Lancaster* and *Taylor* noted that the complained-of conduct was committed by supervisors in response to poor job performance, the courts did not hold that a railroad employer is liable for any acts related to workplace issues. *Taylor*, 787 F.2d at 1312-13, 1315; *Lancaster*, 773 F.2d at 819. The courts focused on whether the complained-of conduct was in furtherance of the employer's goals or interests. *Taylor*, 787 F.2d at 1314-15; *Lancaster*, 773 F.2d at 819.

In conclusion, the evidence at trial arguably supported each party's case theory. The jury considered the evidence, including Schmidt's testimony regarding his motivation, and determined that Schmidt was not acting in the scope of his employment when he swung the shovel that struck Poole. Viewing the evidence in the light most favorable to the verdict, as this court must, we conclude, de novo, that the jury's determination was not manifestly contrary to the evidence. We therefore affirm the district court's denial of Poole's motion for JMOL.

## II.

Under Minn. R. Civ. P. 59.01(g), a district court may grant a motion for a new trial if "[t]he verdict . . . is not justified by the evidence, or is contrary to law." "On appeal from a denial of a motion for a new trial, an appellate court should not set aside a jury verdict unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the

10

light most favorable to the verdict." *Raze v. Mueller*, 587 N.W.2d 645, 648 (Minn. 1999) (quotations omitted). While the new trial standard is less rigorous than the standard for granting JMOL, it is still a demanding standard. *See Clifford v. Geritom Med, Inc.*, 681 N.W.2d 680, 687 (Minn. 2004) (noting that the new-trial standard is a demanding standard, though it is less rigorous than the standard for granting judgment notwithstanding the verdict).

Because the district court is in a better position to determine whether the verdict is justified by the evidence, this court will not reverse its decision to deny a motion for a new trial absent a clear abuse of discretion. *See Baker v. Amtrak Nat'l R.R. Passenger Corp.*, 588 N.W.2d 749, 753 (Minn. App. 1999) ("Granting a new trial is left largely to the discretion of the [district] court, and a [district] court's decision will be reversed only for a clear abuse of discretion."); *see also Clifford*, 681 N.W.2d at 687 ("A district court is in a better position than an appellate court to assess whether the evidence justifies the verdict and [appellate courts] usually defer to that court's exercise of the authority to grant a new trial.").

The district court, after properly weighing the evidence, found that the "preponderance of evidence shows that Mr. Schmidt was not attempting to benefit Soo Line or further Soo Line's business when he struck Mr. Poole with the shovel." It thus concluded that "[t]he preponderance of evidence supports the jury's finding that Mr. Schmidt did not act within the scope of his employment," that the jury's verdict was justified by the evidence, and that Poole was not entitled to a new trial.

11

Poole's arguments for reversing the district court's denial of his new trial motion are similar to his arguments for reversing the district court's denial of his motion for JMOL. He contends that "[a]lthough Mr. Schmidt testified at both the formal investigation and at trial that the act [of swinging the shovel] was done as a joke or in a jokingly manner, his testimony did not support his conclusion." Poole points out that Schmidt also testified that there was no joke and that he carelessly swung the shovel without realizing a co-worker was within striking distance. Poole argues that "[a]lthough Schmidt and other witnesses claimed his act was done in a joking manner or as horseplay, there was no corroborating evidence admitted at trial supporting such a claim or conclusion."

Although this may have been a close case at trial, it is not an exceptional case in which the jury's finding "is contradicted by logic and [the] evidence at almost every point." *Cf. Lamb v. Jordan*, 333 N.W.2d 852, 856 (Minn. 1983) (concluding that evidence did not justify jury verdict in case where key witness's story was inconsistent with complaint, did not appear credible, and was not supported by other evidence). Schmidt testified that he swung his shovel jokingly. That testimony shows that Schmidt was not acting to further Soo Line's interest, and it therefore supports the jury's verdict. Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that the district court did not clearly abuse its discretion by denying Poole's new trial motion.

**Affirmed.**