*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0256**

William J. Anderson,
Appellant,

vs.

Trails End Enterprises of Duluth, LLC, et al.,
Respondents

**Filed October 31, 2016
Affirmed
Worke, Judge**

St. Louis County District Court
File No. 69DU-CV-13-2658

John H. Bray, Maki & Overom, Ltd., Duluth, Minnesota (for appellant)

William D. Paul, William Paul Law Office, Duluth, Minnesota (for respondents)

Considered and decided by Peterson, Presiding Judge; Worke, Judge; and Hooten, Judge.

### U N P U B L I S H E D   O P I N I O N

**WORKE**, Judge

Appellant argues that the district court erred by granting respondents' motion for judgment as a matter of law (JMOL) and vacating a jury verdict awarding appellant damages for fraud, conversion, and unjust enrichment. Because the evidence does not support the jury's verdict, we affirm.

# FACTS

With the assistance of his then-attorney Karen Olson, appellant William J. Anderson (William) formed respondent Trails End Enterprises of Duluth LLC by filing articles of organization on March 3, 2005. The articles of organization named William as the LLC's organizer and registered agent but did not designate any initial members.

William formed Trails End to hold title to real property known as the "Mall Property." William purchased the Mall Property several years earlier with respondent Dale Cich, but because Cich was having legal troubles, the two decided that William should be the sole legal owner of the property. William and his wife conveyed the Mall Property to Trails End on March 4, 2005, by quit claim deed.

Olson drafted a member control agreement for Trails End that named William and respondent Diane C. Anderson (Diane),[1] Cich's significant other, as the sole governors and members of Trails End. This agreement, however, was never signed.

In March 2006, William, Cich, and Diane met with Olson to complete the paperwork organizing Trails End. William and Cich told Olson that due to financial problems, they did not want to be legally connected to Trails End. They asked Olson to draft documents making Diane the sole member and owner of Trails End. Olson drafted an operating agreement and two other documents. At the meeting and in Olson's presence, Diane signed the documents.[2]

---

[1] William and Diane are not related. Because they have the same last name, this opinion uses their first names for ease of reference.

[2] Olson, Cich, and Diane all testified that this meeting occurred in March 2006. William, however, denied ever asking Olson to draft documents making Diane the sole member of

2

The operating agreement provides that "[o]wnership rights in [Trails End] are reflected in membership units" and that "[e]ach membership unit has equal governance rights with every other membership unit." The documents state that Diane is the chief manager, president, treasurer, secretary, governor, and sole member of Trails End. They give Diane authorization "to borrow money for and on behalf of and in the name of [Trails End]; to make any agreements in respect thereto; and to sign, execute and deliver promissory notes, acceptances or other evidences of indebtedness."

Olson was concerned that William transferred the Mall Property to Trails End without maintaining any ownership interest in the company. William was not compensated for conveying the Mall Property to Trails End. Olson believed that William, Cich, and Diane had some underlying agreement and strongly urged them to put it in writing. They told her that they did not want to do so.

On November 6, 2008, Trails End mortgaged the Mall Property. The mortgage secured a $300,000 loan. The funds from the loan went to fund a separate company owned and operated by Diane and Cich. Over the next several years, Trails End mortgaged the property four more times. Each mortgage secured a loan used to fund Diane and Cich's

---

Trails End. Olson was the first witness called by William's attorney, but William's testimony directly contradicted Olson's testimony. William testified that there was no March 2006 meeting and that he met with Olson, Cich, and Diane sometime in 2008 but never saw a document making Diane the sole member of Trails End. William suffered strokes in 2007 and 2008, and his testimony was confused. In his brief to this court, William concedes that the March 2006 meeting took place as Olson, Cich, and Diane testified and that Diane obtained full control of Trails End at that time.

other company. In October 2013, Trails End sold a portion of the Mall Property. William did not receive any of the proceeds.

In October 2013, William commenced a lawsuit, alleging that Diane "wrongfully acquired all membership interest in [Trails End], and has refused and neglected to return those shares." He sued Diane, Cich, and Trails End for fraud, conversion, and unjust enrichment.

A jury found Diane liable for unjust enrichment and conversion. It found Trails End liable for fraud, conversion, and unjust enrichment, and it found Cich liable for fraud. In total, the jury awarded William $500,000 in damages.

After the verdict, respondents renewed a prior motion for JMOL. They argued, as they had at trial, that William's claims were barred by the statute of limitations. The district court granted respondents' motion for JMOL and vacated its previous order entering judgment according to the jury verdict. The district court determined that William relinquished all rights to Trails End and the Mall Property in March 2006. Accordingly, the six-year statute of limitations accrued at that time. Because William failed to commence suit until October 2013, his claims were barred. This appeal follows.

## DECISION

When a party moves for JMOL after the jury returns a verdict, the district court may "(1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of [JMOL]." Minn. R. Civ. P. 50.02(a). The jury's verdict may not be set aside if any reasonable theory of the evidence can sustain it. *Longbehn v. Schoenrock*, 727 N.W.2d 153, 159 (Minn. App. 2007). "Courts must view the evidence in the light most favorable to the nonmoving party

4

and determine whether the verdict is manifestly against the entire evidence or whether despite the jury's findings of fact the moving party is entitled to [JMOL]." *Id.* (quotation omitted). This court reviews the district court's grant of JMOL de novo. *Id.*

In granting respondents' motion for JMOL, the district court focused on the statute of limitations. The district court, however, also noted that several of the jury's findings are not supported by the evidence. Because no reasonable theory of the evidence can sustain the jury's verdict, we affirm the district court's grant of JMOL on that basis and need not reach the statute-of-limitations question. We examine each of William's claimed causes of action in turn.

*Fraud*

To establish a fraud claim, the plaintiff must prove:

> (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance.

*U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011). The district court determined that the jury's verdict was erroneous because William failed to allege or present any evidence at trial of a false representation of a past or existing material fact that he relied on and caused him damage. We agree.

William's complaint alleges that Diane and Cich "represented that they would return the ownership of Trails End to [William]" and that William relied on this representation. But no evidence of such a misrepresentation was introduced at trial. Olson testified that

5

because William had conveyed the Mall Property to Trails End without receiving compensation and then allowed Diane to become the sole member and owner of Trails End, she believed there was some underlying agreement between William, Cich, and Diane regarding Trails End and the Mall Property. But this was just speculation. Olson admitted that she was not "privy to" the terms of this presumed agreement. When Olson asked the parties to put the agreement in writing, they refused, and none of the parties mentioned such an agreement in their testimony.

Moreover, even if Diane or Cich falsely represented that they would share future proceeds from the Mall Property with William or give William an ownership interest in Trails End at a later date, such a representation does not relate to a past or existing material fact. "It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000) (quotation omitted). A representation of a future act may support a claim of fraud only if there is affirmative proof that at the time the promise was made the promisor had no intention to perform. *Id.* Here, there is no affirmative proof that Diane or Cich made a promise to share future profits or give William a future interest in Trails End.

### Conversion

To sustain a claim of conversion, the plaintiff must establish: "an act of willful interference with [the personal property of another], done, without lawful justification, by which any person entitled thereto is deprived of use and possession." *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585 (Minn. 2003). The jury found that Diane

6

intentionally deprived William of his interest in Trails End and its property. *See* Minn. Stat. § 322B.30, subd. 1 (2014) (providing that a membership interest in a LLC is personal property). But the evidence shows that William willingly gave all interest in Trails End to Diane in March 2006. At William's request, his attorney drafted documents making Diane the sole member and owner of Trails End. *See* Minn. Stat. § 322B.03, subd. 35 (2014) (defining "[o]wners" for purposes of LLCs as "members"). Diane did not convert William's interest in Trails End because William chose to relinquish it.

Moreover, as the district court concluded, respondents could not have committed conversion by mortgaging the Mall Property. The Mall Property was not mortgaged until November 2008. After March 2006, William had no interest in the property because he had conveyed it to Trails End and Diane was the sole member and owner of Trails End.

*Unjust Enrichment*

To support his claim of unjust enrichment, William had to show that: (1) he conferred a benefit on respondents; (2) respondents knowingly accepted the benefit; and (3) it was inequitable for respondents to accept and retain the benefit without paying for it. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996). "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Id.* (quotation omitted). This court has also stated that unjust enrichment "may be founded on failure of consideration, fraud, or mistake, or situations where it would be morally wrong for one party to enrich himself at the expense of another." *Mon-Ray, Inc. v. Granite Re, Inc.*, 677

7

N.W.2d 434, 440 (Minn. App. 2004) (quotation omitted), *review denied* (Minn. Jun. 29, 2004).

While respondents received something of value from William, there is no evidence that there was anything illegal, unlawful, or even unjust about their acceptance and retention of this benefit. The evidence shows that William, who was represented by an attorney, chose to transfer the Mall Property to Trails End and to make Diane the sole member and owner of Trails End. Although the facts surrounding this transaction were odd, there is no evidence of actual fraud or other impropriety.

There is no reasonable theory of the evidence that can support William's fraud, conversion, or unjust-enrichment claims. Accordingly, the district court did not err by granting JMOL.

**Affirmed.**