# IN THE COURT OF APPEALS OF IOWA

No. 19-1408
Filed June 17, 2020

**ANDREW DUYVEJONCK,**
        Plaintiff-Appellant,

**vs.**

**DEBRA CLYDESDALE,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Thomas G. Reidel, Judge.

Andrew Duyvejonck appeals the district court's summary judgment ruling concluding a statement allegedly made by Debra Clydesdale about Duyvejonck was an expression of opinion and not defamation per se.  **AFFIRMED.**

Michael J. McCarthy of McCarthy, Lammers & Hines, LLP, Bettendorf, for appellant.

Robert V.P. Waterman Jr. and Alexander C. Barnett of Lane & Waterman LLP, Davenport, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

Plaintiff appeals the district court's grant of summary judgment for defendant on his defamation per se claim. The district court ruled the statement allegedly made by the defendant, when viewed in context, constituted a non-actionable opinion. We agree and affirm the district court's summary judgment ruling.

### I. Background Facts and Proceedings.

In April 2017, Debra Clydesdale engaged Denise Dale, a mutual acquaintance of herself and Andrew Duyvejonck, in a conversation at a local restaurant and bar in Eldridge, Iowa. At the time, Andrew was divorcing his now ex-wife and Clydesdale's good friend, Tennesha Duyvejonck. After approaching Dale, Clydesdale asked if they could "talk about this situation with Tennesha and Andrew." According to Dale's affidavit,[1]

> She began telling me about what a horrible person Andrew was, and that he had treated Tennesha unfairly, committed adultery, and abused her. She suggested I call Tennesha, and consider testifying on her behalf in [the divorce] case, as her friend. . . . Next, [Clydesdale] proceeded to ask me if I thought it was weird that Andrew spent so much time with the kids, and had lunch all the time with them at school. "Don't you think that is weird, Denise? I mean, he stays and plays on the playground with the kids. That is not normal! I'm telling you, there is something sick about this guy. Why would he want to spend so much time around little kids? I swear he is a pedophile, and that is why he is at school so much!?" I told her I did not agree, and that I saw lots of parents come and eat with their kids, and many had their Mom or Dad stay over afterwards to play with them on the playground.

---

[1] The statements are from a November 2017 letter from Dale to Andrew's lawyer. Later, in support of her resistance to a summary judgment motion, Dale attached the letter to an affidavit swearing the letter was written by her and the statements and allegations in it were true and correct.

I ended the conversation by 8:45pm, as she was continuing on her personal tirade about Andrew's personality and behavior. Much of it was purely her personal opinion, as Tennesha's best friend. I have known and been good friends with Andrew [Duyvejonck] since 2013, when our kids first met in the neighborhood. I have never seen him demonstrate any inappropriate behavior with any children, including his own or anyone else's. I was outraged at [Clydesdale]'s unfounded, and deeply disturbing, accusations, and called Andrew immediately to tell him what was said. It was upsetting to think that someone would make such a scandalous statement about someone without any proof, especially in our small community. (Emphasis omitted).

In December 2017, Andrew sued Clydesdale for defamation. His petition claimed: "On April 29, 2017, [Clydesdale] falsely spoke of and concerning [Andrew], stating to Denise Dale and in the hearing of others that, 'I swear he is a pedophile, and that is why he is at school so much!'" Andrew asserted he suffered damages as a result of the statement, and he requested punitive damages. Clydesdale denied Andrew's claims in her answer to the lawsuit. Later, in an affidavit supporting her motion for summary judgment, Clydesdale stated she "privately discussed" Andrew's pending divorce with a mutual acquaintance, Denise Dale. Clydesdale stated she struck up the conversation with Dale to inform "Dale of the various ways she believed [Andrew] had mistreated her close friend, Tennesha [Duyvejonck]." Among other things, she informed Dale that she believed Andrew "significantly increased the amount of time he spent at his children's school in an effort to appear as if he was a better parent than Tennesha [Duyvejonck] while their divorce was pending." Clydesdale's answer to the lawsuit denies she made the alleged "pedophile" remark. Her sworn affidavit is silent on the matter.

In her motion for summary judgment, Clydesdale argued:

> [Andrew] cannot establish a *prima facie* case of slander. Clydesdale's alleged statement is pure opinion because the factual premises underlying the statement are revealed. Likewise, even assuming Clydesdale called [Andrew] "a pedophile," a reasonable listener would have easily perceived that Clydesdale's words were mere name-calling or hyperbole and constituted an emotional venting of opinion within the context of her friend's divorce from [Andrew]. (Courtesy titles omitted).

Ultimately, the district court agreed with Clydesdale. The court held,

> Because the entire conversation between [Clydesdale] and Ms. Dale was about [Andrew]'s divorce and Ms. Dale understood the conversation to be a personal opinion and tirade against [Andrew], the context of the entire conversation is supportive of a finding that she was expressing a scatological subjective opinion about [Andrew].

The court ruled that Clydesdale's "alleged statement constitutes non-actionable opinion under the Constitution" and granted the motion for summary judgment. Andrew appeals. Our review is for corrections of errors at law. *See Linn v. Montgomery*, 903 N.W.2d 337, 342 (Iowa 2017).

## II. Discussion.

Summary judgment is proper only when the entire record shows the lack of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Linn*, 903 N.W.2d at 342. "A matter may be resolved on summary judgment if the record reveals only a conflict concerning the legal consequences of undisputed facts." *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008). "When the facts are not in dispute, 'our role is simply to decide whether we agree with the district court's application of the law to the undisputed facts before us.'" *Kennedy v. Zimmermann*, 601 N.W.2d 61, 64 (Iowa 1999) (citation omitted) (cleaned up). "In the context of a defamation action, only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 889 (Iowa 1989) (citation omitted) (cleaned up), *overruled on other grounds by Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 224 (Iowa 1998).  The trial court also has the unique responsibility of determining "whether 'allowing a case to go to a jury would, in the totality of the circumstances, endanger first amendment freedoms.'"  *Id.* (citation omitted); *see also Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013).  "When reviewing a district court's ruling, we view the record in the light most favorable to the nonmoving party."  *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 36 (Iowa 2018).

Iowa's defamation law "'embodies the public policy that individuals should be free to enjoy their reputation unimpaired by false and defamatory attacks.'"  *Id.* at 46 (citation omitted).  "The centuries-old tort of defamation of character protects a person's common law 'interest in reputation and good name.'"  *Bertrand v. Mullin*, 846 N.W.2d 884, 891 (Iowa 2014) (citation omitted).

Andrew argues Clydesdale's comment was defamatory per se.  To succeed in proving defamation per se, a party must prove three elements:  (1) publication, (2) a defamatory per se statement, and (3) the statement was of or about the party.  *See Bandstra*, 913 N.W.2d at 46-47.

To prove publication, a party must show the challenged communication was made "to one or more third persons."  *Id.* at 47 (citation omitted).  A "published statement" may be communicated orally or in writing and can even include the alteration of an image.  *See Bertrand*, 846 N.W.2d at 891.  "The third person must not only hear the statement, but also understand it to be defamatory.  Whether a

listener understands a statement to be defamatory requires viewing the statements 'in the context of the surrounding circumstances and within the entire communication.'" *Bandstra*, 913 N.W.2d at 47 (citations omitted). The publication element was satisfied when Clydesdale made the alleged statement to Dale.

A defamatory per se statement has "a natural tendency to provoke the plaintiff to wrath or expose [the plaintiff] to public hatred, contempt, or ridicule, or to deprive [the plaintiff] of the benefit of public confidence or social intercourse." *Bierman*, 826 N.W.2d at 444 (Iowa 2013). "An attack on the integrity and moral character of a party is libelous per se." *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 116 (Iowa 1984). "Some statements are considered to be defamatory per se if they are of a nature that a court can presume as a matter of law that their publication will have a defamatory effect," *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996), such as "accusing an individual of being a liar, accusing an individual of an indictable crime of moral turpitude or that carries a jail sentence, and accusing an individual of falsifying information." *Bandstra*, 913 N.W.2d at 47 (citations omitted). Other statements characterized as defamation per se include imputation of a loathsome disease, *Shultz v. Shultz*, 275 N.W. 562, 565 (Iowa 1937), adultery, *Arnold v. Lutz*, 120 N.W. 121, 121 (Iowa 1909), bestiality, *Haynes v. Ritchey*, 30 Iowa 76, 77 (1870), and theft, *Hicks v. Walker*, 2 Greene 440, 442 (Iowa 1850). *See also Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004) (citing cases and Patrick J. McNulty, *The Law of Defamation: A Primer for the Iowa Practitioner*, 44 Drake L. Rev. 639, 650-52 (1996) ("cataloguing Iowa slander per se cases, which the author suggests fall into four general categories: imputation of (1) certain indictable crimes, (2) loathsome disease, (3) incompetence in

occupation, and (4) unchastity")). Even so, as one court aptly stated, "Americans have been hurling epithets at each other for generations. . . . Certainly such name calling, either expressed or implied, does not always give rise to an action." *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 808 (W.D. Pa. 1972).

There is no question the term "pedophile" has a repugnant, repulsive, and vile connotation. In fact, "in almost every circumstance a reasonable listener would believe that calling a person a pedophile imputes serious sexual misconduct or criminal activity to that person." *Longbehn v. Schoenrock*, 727 N.W.2d 153, 159 (Minn. Ct. App. 2007) (holding that calling a person a pedophile was defamatory per se); *see also Wilson v. Wilson*, No. 21443, 2007 WL 127657, at *3 (Ohio Ct. App. Jan. 19, 2007) (accusation of pedophilia "constituted defamation per se because the assertion of pedophilia involves a charge of moral turpitude and is an indictable offense"); *accord Rossignol v. Silvernail*, 586 N.Y.S.2d 343, 345 (App. Div. 1992) (upholding defamation award when the plaintiff was "labeled a child abuser—one of the most loathsome labels in society"). "There are few accusations more damaging or harmful to a young man's reputation than being called a sex offender or child molester." *Kennedy v. Jasper*, 928 S.W.2d 395, 400 (Mo. Ct. App. 1996). In *Bierman*, a defendant author made statements about the plaintiffs—his ex-wife and her father—in his published book. *See* 826 N.W.2d at 440. The author accused his ex-wife "of lying to their daughters, being a bad parent, having a lack of religious conviction, and generally being mean and spiteful." *Id.* He alleged his ex-wife's father "molested her as a child and that she suffered from either bipolar disorder or borderline personality disorder as a result." *Id.* The district court in that case found the statements alleged constituted

defamation per se and granted partial summary judgment for the plaintiffs. *Id.* The supreme court affirmed the ruling, agreeing "that 'stating a person has been molested by their father and suffers from bipolar disorder constitutes libel per se under Iowa law.'" *Id.*

While pedophilia is not a crime per se,[2] it suggests a criminal act has or will occur. We do not see how calling someone a "pedophile" is distinguishable from asserting someone is a child molester or suffers from a mental disorder. In any event, pedophilia is a mental disorder. The term pedophile unambiguously tends to subject a person so labeled to wrath or expose the person to public hatred, contempt, or ridicule. We therefore characterize an accusation of pedophilia as defamation per se. The second element was satisfied.

The alleged statement was about Andrew, so the third element was satisfied. Although all three elements necessary to prove defamation per se have been met, our task does not end here.

Clydesdale argues her alleged comment was "pure opinion" protected under the First Amendment. Historically, all statements of opinion were considered "absolutely protected under the First Amendment." *See Jones*, 440 N.W.2d at 891. But the Supreme Court clarified that was not the case, rejecting "the creation of an artificial dichotomy between 'opinion' and 'fact.'" *Yates v. Iowa W. Racing Ass'n*,

---

[2] A "pedophile" is defined as a person "who is sexually attracted to children." *Pedophile*, Black's Law Dictionary (11th ed. 2019); *see also Copeland-Jackson v. Oslin*, 555 F. Supp. 2d 213, 217 (D.D.C. 2008) ("The dictionary definition of 'pedophile' is 'an adult who is sexually attracted to a child or young children.'"). By definition, it is a mental state, not an act. Consequently, pedophilia is a crime only when it is acted upon; a person can be a pedophile without having ever been convicted of a sex crime. The terms "pedophile" and "pedophilia" do not appear in Iowa's Criminal Code.

721 N.W.2d 762, 769-71 (Iowa 2006) (discussing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990)). Under *Milkovich*, "statements of opinion can be actionable if they imply a provable false fact, or rely upon stated facts that are provably false." *Id.* at 771 (citation omitted). It "is not the literal wording of the statement" a plaintiff must prove false "but what a reasonable reader or listener would have understood the author to have said." *Id.* Statements that cannot reasonably be interpreted as stating actual facts about a person, such as rhetorical hyperbole, are protected by the First Amendment. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 82 (Iowa 2008) (discussing *Milkovich*, 497 U.S. at 16-22).

In evaluating the totality of the circumstances while determining whether a statement is a protected opinion, we consider four factors: (1) "whether the alleged defamatory statement has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous"; (2) "the degree to which the alleged defamatory statements are objectively capable of proof or disproof"; (3) "the context in which the alleged defamatory statement occurs"; and (4) "the broader social context into which the alleged defamatory statement fits." *Bandstra*, 913 N.W.2d at 47 (cleaned up). Here, the district court considered these factors and ultimately concluded that "the context of the entire conversation is supportive of a finding that [Clydesdale] was expressing a scatological subjective opinion about [Andrew]." Though this is a close call, we agree.

As to the first factor, the district court found,

The term "pedophile" means "an adult who engages in pedophilia." *State v. Dozal*, No. 06-0484, 2006 WL 3019025, at *1 (Iowa Ct. App. Oct. 25, 2006) (quoting *Pedophile*, Black's Law Dictionary (8th ed. 2004)). Pedophilia is a serious mental disorder that is directly related to individuals who commit certain types of sexual offense crimes against children including the "adult act of child molestation." *Id.; see Kansas v. Hendricks*, 521 U.S. 346, 360 (1997); *see In re Detention of Barnes*, 689 N.W.2d 455, 459–60 (Iowa 2004). The general consensus of what constitutes a "pedophile" aligns with the legal definition and explanations.

Based upon the definition of the word "pedophile" and its correlation to a serious mental disorder and criminal activity with minors as victims, the Court finds that the term "pedophile" "has a precise core of meaning for which a consensus of understanding exists." *See Yates*, 721 N.W.2d at 770. Therefore, the Court also finds that the alleged defamatory statement at issue has a meaning for which a majority of people understand. (Footnote omitted).

As to the second factor, the district court found,

Under the Iowa Code, one definition of sexual abuse is when a sex act is performed, and one of the individuals involved is a child. Iowa Code § 709.1 (2019). The Iowa Code also has a list of sexual acts that are illegal to perform with a child. Iowa Code §§ 709.8, 709.12 (2019). The state of Iowa also has rules of evidence that determine what is admissible and inadmissible in court proceedings. *See* Iowa R. Evid. ch. 5. Therefore, if a sexual offense crime against a child is committed, there is a process in which to prove that a person committed a sexual act that is associated with pedophilia.

However, proving whether an individual is a pedophile is not easily verifiable. An individual can be labeled a pedophile through a medical diagnosis or findings of a Court. *See Kansas*, 521 U.S. at 360; *see Dozal*, 2006 WL 3019025, at *1. For accusations of criminal behavior associated with pedophilia to make it to a courtroom or to a doctor for diagnosis, the sexual offense often has to be reported to law enforcement. There are also instances in which children delay reporting sexual abuse or show no immediate signs of sexual abuse. *See State v. Fox*, 480 N.W.2d 897, 899 (Iowa Ct. App. 1991); *State v. Dodson*, 452 N.W.2d 610, 610–612 (Iowa Ct. App. 1989).

Therefore, the Court finds that while proving an individual is a pedophile is capable of being proven or disproven under Iowa law, it is not easily verifiable. (Footnote omitted).

As to the third and fourth elements, the district court found,

To examine the context of the Defendant's statement, the Court must examine the entire conversation and not just the word "pedophile."

The crux of this action turns on the context of the Defendant's entire conversation with Ms. Dale. In the present case, Ms. Dale was the Defendant's intended audience because the Defendant specifically approached her to talk about the Plaintiff's divorce. During the conversation, the Defendant allegedly also told Ms. Dale that the Plaintiff abused, cheated on, and treated his ex-wife unfairly. The social context of the entire conversation and alleged defamatory statement was at a minimum an attempt to change Ms. Dale's personal opinion of the Plaintiff by gossiping about the divorce and at a maximum a veiled attempt to persuade Ms. Dale to testify for the Plaintiff's ex-wife during the divorce proceedings. Ms. Dale, as the intended audience, understood the Defendant's alleged defamatory statement as a tirade and mostly a personal opinion of the Defendant to the point that she had a direct response to the Defendant's alleged defamatory statement.

In a vacuum, the statement "I swear he is a pedophile" would be viewed by the average listener as a statement of fact that the person spoken of was a child molester. It is easy to verify if one is a convicted child molester. Unless convicted of sex abuse of a child, it is not so easy to verify if one is a pedophile. Under the circumstances presented here, we believe the most important factor is the context in which the statement was made. We agree with the district court that if Clydesdale made the comment, a reasonable person would have understood she was stating her opinion in a rant against Andrew rather than setting forth actual facts. The proof in the pudding is that Dale did not believe the comment for a second. In fact, Dale told Clydesdale to her face that she did not agree. Dale recognized much of what Clydesdale said was a harangue of purely personal opinion by Tennesha's best friend. While calling Andrew a pedophile was repugnant, repulsive, and vile— "vitriolic name-calling at a minimum" as the district court put it—the statement as alleged did not rise to the level of defamation per se under the context of the conversation. The district court was on the mark when it concluded that "Because the entire conversation between [Clydesdale] and Ms.

Dale was about [Andrew]'s divorce and Ms. Dale understood the conversation to be a personal opinion and tirade against [Andrew], the context of the entire conversation is supportive of a finding that she was expressing a scatological subjective opinion about [Andrew]."

Given the circumstances and context in which the alleged statement was made, we agree with the district court that the statement made by Clydesdale to Dale constituted protected non-actionable opinion speech. Thus, Andrew cannot establish a prima facie case of defamation and his claim fails as a matter of law. So we affirm the district court's ruling granting summary judgment for Clydesdale.

**AFFIRMED.**