JEM ACRES, LLC, d/b/a/ Birch
Haven Resort, Respondent,

v.

Patrick J. BRUNO, et al., Appellants.

No. A08–0735.

Court of Appeals of Minnesota.

April 14, 2009.

Joan M. Quade, Barna, Guzy & Steffen, Ltd., Minneapolis, MN, for respondent.

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, and Ryan K. Kieson, Drahos, Kieson & Christopher, P.A., Bemidji, MN, for appellants.

Considered and decided by TOUSSAINT, Chief Judge; SCHELLHAS, Judge; and CONNOLLY, Judge.

## OPINION

SCHELLHAS, Judge.

Appellants challenge the district court's denial of their motion for judgment as a matter of law, arguing that the evidence does not support the jury's verdict that (1) appellants violated Minn.Stat. § 115.55, subd. 6 (2008), or (2) appellants committed a breach of contract or fraud. Appellants also challenge the district court's denial of their motion for a new trial, arguing that the damages awarded to respondent were excessive. We conclude that the evidence supports the jury's verdict and award of damages, and we affirm.

## FACTS

In April 2003, appellant Susan B. Bruno purchased the Birch Haven Resort, located in Beltrami County, for $525,000. She and her husband, appellant Patrick J. Bruno, agreed to sell the resort to Jerry Gaslin and Kate Gaslin in February 2005 for $580,000. The Gaslins took possession of the property on June 2, 2005, and closed on the purchase on June 7, 2005. The Gaslins are the sole owners of respondent JEM Acres, LLC, d/b/a Birch Haven Resort (JEM). The resort contains two sep-

tic systems, which were installed in 1986. In section 5.J. of the parties' purchase agreement, the sellers warranted that: "To the best of Sellers' knowledge all sewage disposal systems located on the Real Property are approved by the Zoning Administrator and when installed were in compliance with all applicable laws and regulations at that time and are currently in compliance and in working condition." The sellers' real estate broker, Norm Cole, told Patrick Bruno that the septic systems had to be inspected before closing. Patrick Bruno told Cole and the Gaslins that he would have the septic systems inspected. At the closing on June 7, Patrick was asked about the inspection and said "good to go" and gestured a "thumbs-up." In fact, the septic systems had not been inspected since 2002.

Two days after the closing, Jerry Gaslin noticed pieces of slab wood on top of the mound for one of the septic systems, and when he removed the wood he found that the mound was "wet and mushy." Later that day, he discovered that the same septic system was emitting sewage onto the ground. Gaslin informed Patrick Bruno of this, and Bruno stated that he had experienced this problem in the past and instructed Gaslin to pile dirt on the wet spots. Bruno also informed Gaslin that if he looked at the mound for the other septic system, he would see dirt piled up on it.

On July 12, 2005, the Gaslins obtained an inspection of both septic systems. The inspector, Herbert M. Schilla, found that one system was an "imminent threat to public health or safety" due to the "discharge of sewage to the ground surface" and that the other system was failing because it had less than the required three feet of vertical separation between the bottom of the system and the soil. Also in July 2005, William Patnaude, the Beltrami County Environmental Services Director, looked at the mounds for both septic systems and advised the Gaslins to replace both systems. On October 13, 2005, Patnaude sent the Gaslins a letter informing them that they needed to immediately correct one system and that the other system was "seriously hydraulically overloaded" and "ready for failure."

In August 2005, after the Gaslins informed the Brunos that both septic systems were failing, Cole obtained an inspection of the systems by Laird Hensell, who had inspected the systems in 2002 and declared them to be compliant. Hensell agreed with Schilla that one system was noncompliant and added that the system should be considered "an imminent health threat due to evidence of hydraulic failure causing surface discharge" and that the mound was "severely undersized." As to the other septic system, Hensell disagreed with Schilla's assessment that the vertical-separation requirement was not met and certified the system as compliant. But Hensell opined that the system he certified as compliant was "on the verge of hydraulic failure" and was also "severely undersized."

The Gaslins obtained three bids for replacing the septic systems, the lowest being $94,500. The Gaslins sued the Brunos under Minn.Stat. § 115.55, subd. 6(b) (2004), and for breach of contract and fraud relating to the Brunos' failure to disclose the condition of the septic systems prior to closing. The jury found for the Gaslins on all of its claims and awarded them $94,000 in damages. The district court subsequently awarded the Gaslins attorney fees and denied the Brunos' motions for judgment as a matter of law and a new trial. This appeal follows.

## ISSUES

I. Does JEM have standing to bring this suit?

II.   Did the district court err by denying the Brunos judgment as a matter of law?

III.   Did the district court abuse its discretion by denying the Brunos a new trial because the jury's award of damages was excessive?

### ANALYSIS

#### I.

The Brunos first argue that JEM has no standing to sue them.   Because standing is essential to a court's jurisdiction, the issue of standing can be raised at any time.   *State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 850 (Minn.1985).   A party acquires standing in one of two ways: "either the plaintiff has suffered some injury-in-fact or the plaintiff is the beneficiary of some legislative enactment granting standing."   *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn.1996) (quotation omitted).   The Brunos concede that the district court informed the jury that the Gaslins are the owners of JEM but argue that the record does not support a conclusion that JEM has an ownership interest in the property purchased by the Gaslins, Birch Haven Resort.

Paragraph 1   of JEM's complaint states that "JEM Acres d/b/a/ Birch Haven Resort is . . . the current [owner] of property known as Birch Haven Resort." In their answer to the complaint, the Brunos admit paragraph 1. "Where a fact is admitted in the pleadings, the admission stands in the place of evidence." *Phelps v. Benson*, 252 Minn. 457, 480, 90 N.W.2d 533, 548 (1958). We conclude that JEM's ownership of Birch Haven Resort is established for the purposes of this proceeding and that JEM has standing to sue the Brunos.   To conclude otherwise would be to penalize JEM for not entering documentary evidence on a point which, because it was admitted, JEM had no reason to understand or believe was contested.

#### II.

The Brunos challenge the district court's denial of their motion for judgment as a matter of law (JMOL).   JMOL is appropriate when a jury verdict has no reasonable support in fact or is contrary to law. *Longbehn v. Schoenrock*, 727 N.W.2d 153, 159 (Minn.App.2007).   Courts must determine whether the verdict is manifestly against the entire evidence, as viewed in the light most favorable to the nonmoving party.   *Id.* "The jury's verdict will not be set aside if it can be sustained on any reasonable theory of the evidence." *Id.* (quotation omitted.)   We review de novo a district court's denial of JMOL. *Id.*

##### *Minn.Stat. § 115.55, subd. 6*

The Brunos·argue that as a matter of law, they did not violate Minn.Stat. § 115.55, subd. 6 (2008).   Section 115.55, subdivision 6(a), provides that if sewage is not routed to a permitted facility, the seller must make a series of specific disclosures, including whether the sewage-treatment system is, "to the seller's . . . knowledge, in compliance with applicable sewage treatment laws and rules."   Subdivision 6(b) expands on the seller's obligations and the effect of disclosures made at the time of the sale: "a seller who knew or had reason to know of the . . . known status" of a sewage-treatment system "and fails to disclose this status to the buyer is liable for costs related to bringing the system into compliance with the sewage treatment system rules and for reasonable attorney fees."   Minn.Stat. § 115.55, subd. 6(b) (2008).

The standards for septic-system compliance are defined by local ordinances and by chapter 7080 of the Minnesota

Rules. *See* Minn.Stat. § 115.55, subd. 2(a) (2008) (providing that local government units must adopt ordinances that implement the rules promulgated by the Minnesota Pollution Control Agency), subd. 3(a)(2) (2008) (requiring the agency to establish how local government units will enforce ordinances under section 115.55, subdivision 2, "including requirements for permits and inspection programs"); Minn. Rules 7080.0060 (2005) (defining compliance criteria for individual sewage-treatment systems).[1] In particular, rule 7080.0060, subp. 4, provides that unless specifically permitted by the Minnesota Pollution Control Agency, a sewage system shall not "discharge sewage or sewage tank effluent, to the ground surface or to surface water," or "seep to the ground surface." These rules provide no exceptions for septic systems operating under a valid certificate of compliance. Therefore, even if a valid certificate of compliance exists for a septic system, the system is noncompliant if it does not conform to the standards defined in local ordinances and chapter 7080 of the Minnesota Rules. *See Kellogg v. Woods,.* 720 N.W.2d 845, 850 (Minn.App.2006) (affirming the district court's determination that a septic system was noncompliant when the seller had reason to know that cracks were present in the septic tank even though the cracks were not actually discovered until months later).

The Brunos argue that the phrase, "reason to know," as used in section 115.55, subdivision 6(b), does not have the same meaning as the phrase, "should know."

*See* Restatement (Second) of Agency § 9 cmt. d, e (1958). (explaining that "should know" implies a duty to ascertain facts, while "reason to know" implies no such duty). But even accepting the Brunos' argument that "reason to know" and "should know" have different meanings, the record contains evidence that the Brunos had reason to know of problems with the septic system. Jerry Gaslin observed sewage being emitted from one of the septic systems only two days after the closing. He conveyed this information to Patrick Bruno, who stated that he had experienced similar problems. Approximately one month later, on July 12, 2005, both systems failed inspection. That the evidence shows that the septic systems failed inspection within approximately one month of the closing reasonably supports the inference that the Brunos had reason to know that the septic systems were noncompliant at the time of sale, and the Brunos provided insufficient evidence to rebut this inference. *See Smith v. Kahler Corp.,* 297 Minn. 272, 276, 211 N.W.2d 146, 150 (1973) (stating that circumstantial evidence may support a jury's verdict when the evidence justifies the jury's inferences and the jury's inferences outweigh conflicting inferences). Because we conclude that the jury's verdict is reasonably supported by the evidence, we refuse to disturb it. *See Longbehn,* 727 N.W.2d at 159 (stating that a jury's verdict should not be disturbed "if it can be sustained on any reasonable theory of the evidence" (quotation omitted)). Moreover, because a buyer is entitled to collect "reasonable attorney

---

1. Because the resort was sold in 2005 and because Minn. Rules 7080.0060 was repealed thereafter, we use the 2005 version of Minn. Rules 7080.0060 in our analysis. But because the provisions of Minn.Stat. § 115.55 that are pertinent to our analysis have not changed materially since 2005, we use the 2008 version of section 115.55 in our analysis.

*See McClelland v. McClelland,* 393 N.W.2d 224, 226–27 (Minn.App.1986) (indicating that the current version of a statute will be used unless it changes or alters a matured or unconditional right of the parties or creates some other injustice), *review denied* (Minn. Nov. 17, 1986).

fees for collection of costs from the seller" for violations of Minn.Stat. § 115.55, subd. 6(b), and because there is no dispute regarding the reasonableness of the fees sought, we affirm the award of attorney fees to JEM.

### Breach of Contract and Fraud

The Brunos argue that JEM's breach-of-contract claim must also be dismissed as a matter of law. First, the Brunos argue that JEM is not a party to the purchase agreement and is therefore not entitled to recover for breach of contract. But the fact that the Brunos entered into the purchase agreement with JEM was alleged in JEM's complaint, admitted in the Brunos' answer, and was never disputed before the district court. We therefore decline to address this argument. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (holding that a reviewing court will generally not consider matters not argued and considered in the district court).

The Brunos next argue that JEM's breach-of-contract claim is precluded by the merger doctrine. "The merger doctrine generally precludes parties from asserting their rights under a purchase agreement after the deed has been executed and delivered." *Bruggeman v. Jerry's Enters., Inc.,* 591 N.W.2d 705, 708 (Minn. 1999). Here, the purchase agreement provides that, "[t]o the best of Sellers' knowledge all sewage disposal systems located on the Real Property are ... currently in compliance and in working condition," and that "Sellers warrant and represent that they are in compliance with the laws and regulations applicable to their property and to the Business at the time of closing." The Brunos note that pursuant to the purchase agreement, they "disclaim[ed] any warranties following the date of the closing of any nature, of any kind whatsoever whether expressed or implied including

but not limited to structural, environmental, zoning, health code, building code, fire code, and legal description." Further, the Brunos note that pursuant to the purchase agreement, "[t]he representations, warranties, and covenants of Buyers and Sellers contained herein shall survive the closing of this Agreement until the delivery of the warranty deed." The Brunos argue that under the merger doctrine, any contractual promise they made as to the status of the septic systems was extinguished when the deed to the property was delivered to the Gaslins.

The merger doctrine does not apply where there is fraud. *McCarthy's St. Louis Park Cafe, Inc. v. Minneapolis Baseball and Athletic Ass'n,* 258 Minn. 447, 454, 104 N.W.2d 895, 901 (1960). But the Brunos argue that JEM's fraud claim fails because JEM presented no evidence that the Brunos made any fraudulent statements to the Gaslins or that the Gaslins relied on fraudulent statements in purchasing the resort. Proof of fraud requires: (1) that there was a false representation by a party of a past or existing material fact; (2) made with knowledge of the representation's falsity or made as of the party's own knowledge without knowing whether it was true or false; (3) with intent to induce another to act in reliance on that representation; (4) that the other party acted in reliance on that representation; and (5) that the other party suffered pecuniary damage as a result of that reliance. *Hoyt Props., Inc. v. Prod. Res. Group, L.L.C.,* 736 N.W.2d 313, 318 (Minn. 2007).

The district court properly instructed the jury on the elements of fraud, and the jury found that the Brunos committed fraud against the Gaslins. Testimony from the Brunos' real estate broker, Norm Cole, and from the Gaslins reflects that at the closing, Patrick Bruno represented

that the septic systems had recently been inspected and found to be in compliance and that Bruno knew that these representations were false when he made them. The testimony of Cole and the Gaslins also shows that the Gaslins inquired about the septic systems at closing, which supports the conclusion that Patrick Bruno made the representations about the septic systems for the purpose of inducing the Gaslins to close on the purchase agreement. And the jury, acting within its province, apparently found the testimony of Cole and the Gaslins to be credible and that the Gaslins reasonably relied on Bruno's representations. *See Citizens Nat'l Bank of Madelia v. Mankato Implement, Inc.*, 441 N.W.2d 483, 485 (Minn.1989) (stating that determinations of witness credibility are "the sole province of the finder of fact").

As a result of Patrick Bruno's misrepresentations, the Gaslins are now financially burdened with bringing the septic systems into compliance. *See* Beltrami County, Minn., Shoreland Management Ordinance §§ 803 (providing that "no person shall use, occupy, or maintain any premises containing a nonconforming sewage treatment system"), 801(D) ("Non-conforming sewage treatment systems shall be regulated and upgraded in accordance with sections 802 and 803 of this Ordinance.") (2005). Where a jury's verdict is reasonably supported by the record, it shall not be disturbed by this court. *Longbehn*, 727 N.W.2d at 159. We therefore uphold the jury's verdict that the Brunos committed fraud, and we conclude that the merger doctrine does not defeat JEM's breach-of-contract claim.

### III.

▪ The Brunos sought a new trial, arguing that the jury's award of damages was excessive. The district court denied that motion and the Brunos challenge that denial. "The discretion to grant a new trial on the ground of excessive damages rests with the trial court, whose determination will only be overturned for abuse of that discretion." *Advanced Training Sys., Inc. v. Caswell Equip. Co.*, 352 N.W.2d 1, 11 (Minn.1984).

Minnesota Statutes, section 115.55, subdivision 6(b), provides that upon violation of the section, a seller is liable to the buyer for "costs relating to bringing the system into compliance with the individual sewage treatment system rules." The Brunos argue that the jury's damage award was excessive because only one of the inspectors found that both septic systems were noncompliant. They argue therefore that they should be liable at most for the repair, replacement, or upgrade of only that septic system and not the replacement of both septic systems. But the Gaslins' inspector found that both septic systems were noncompliant and, although the Brunos' inspector disagreed, Gaslins' inspector concluded that the "compliant" septic system was "severely undersized," on the "verge of hydraulic failure," and should be upgraded. In addition, William Patnaude, the Beltrami County Environmental Services Director, who looked at both of the septic mounds in July 2005, advised the Gaslins that both septic systems needed to be replaced. In fact, Patnaude later informed the Gaslins that they needed to immediately replace one system and that the other system was "seriously hydraulically overloaded" and "ready for failure." This evidence is sufficient to reasonably support a conclusion that both systems were noncompliant at the time of sale and that the Brunos knew or had reason to know this. The Brunos have not shown that the jury's award of damages should be reversed. *See Longbehn*, 727 N.W.2d at 159 (stating that a jury's verdict should not be overturned "if it can be sustained on

any reasonable theory of the evidence" (quotation omitted)).

The Brunos also argue that one of the septic systems is not in need of replacement under Minn.Stat. § 115.55, subd. 5a(c) (2008), which provides that "[a]n existing system that has none of the conditions in paragraph (b), and has at least two feet of soil separation need not be upgraded, repaired, replaced, or its use discontinued, notwithstanding any local ordinance that is more restrictive." They claim that none of the conditions in paragraph (b), which include sewage backup and sewage discharge to surface water or ground surface, Minn.Stat. § 115.55, subd. 5a(b) (2008), existed as to one of the septic systems. The Brunos further argue that while one of the inspectors found that less than three feet of vertical separation existed between the bottom of one of the systems and the soil below it, neither inspector found less than two feet of vertical separation. But section 115.55, subdivision 5a(d) (2008), provides that "[p]aragraph (c) does not apply to systems in shoreland areas," and all inspection forms indicate that the septic systems were installed in a shoreland area. Therefore, section 115.55, subdivision 5a(c), does not obviate the need to replace the septic system.

Appellants also argue that respondent was awarded excessive damages for its fraud claim and that the court should have applied the out-of-pocket rule. The out-of-pocket rule limits damages for fraud claims to the amount paid for the property minus its fair market value. *B.F. Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 182 (Minn.1988). Appellants argue that there is no evidence in the record that establishes that the status of the septic systems diminished the market value of the resort by $94,000. Because we have concluded that the damages awarded to respondent are not excessive under section 115.55, subdivision 6, we need not address this argument.

The Brunos also argue that the district court erred in its jury instructions by reading section 802 of the Beltrami County Shoreland Management Ordinance and instructing the jury to decide if any "laws and/or ordinances were violated based on the evidence," because the question presented to the jury only involved section 115.55, not the ordinance. We review a district court's selection of jury instructions for an abuse of discretion. *Peterson v. BASF Corp.*, 711 N.W.2d 470, 484 (Minn.2006). The Brunos did not object to the jury instructions. We therefore review the jury instructions "to determine whether there is an error of fundamental law or controlling principle." *Estate of Hartz v. Nelson*, 437 N.W.2d 749, 752 (Minn.App.1989), *review denied* (Minn. July 12, 1989). Because section 115.55, subdivision 2(a), requires municipalities to adopt ordinances that comply with the rules promulgated by the Minnesota Pollution Control Agency and because subdivision 3(a)(2) requires the agency to establish how municipalities shall enforce these ordinances, we conclude that the district court did not commit an error of fundamental law or controlling principle by referring to the ordinance in its jury instruction.

The Brunos also argue that the Gaslins misrepresented to the jury the obligations of a seller under section 115.55 by telling the jury that section 115.55 "puts the obligation on the seller to have a system inspected and to properly disclose it," when this section does not explicitly obligate sellers to have their septic systems inspected prior to sale. But, again, the Brunos did not object to these statements during closing arguments and are precluded from arguing this issue on appeal. *See Bisbee v. Ruppert*, 306 Minn. 39, 48, 235

N.W.2d 364, 370–71 (1975) (stating that when improper remarks are made in closing arguments, a reviewing court generally will not require a new trial in the absence of an objection or a request for curative instructions). And we will not consider this argument because the Brunos raised it for the first time in their reply brief. *See* Minn. R. Civ.App. P. 128.02, subd. 3 ("The reply brief must be confined to new matter raised in the brief of the respondent."); *McIntire v. State,* 458 N.W.2d 714, 717 n. 2 (Minn.App.1990) (stating that issues not addressed in an appellant's principal brief are "waived and cannot be reviewed by addressing them in their reply brief"), *review denied* (Minn. Sept. 28, 1990).

## DECISION

Because the record reasonably supports the conclusion that the Brunos knew or had reason to know that the resort's two septic systems were not compliant at the time of sale, we conclude that the jury's award of damages is justified under section 115.55, subdivision 6. The evidence reasonably supports the jury's verdict that the Brunos committed breach of contract and fraud, and we conclude that the district court did not err in denying appellants JMOL or a new trial.

**Affirmed.**