*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0859**

CBS MN Properties, LLC,
Appellant,

vs.

County of Hennepin,
Respondent.

**Filed March 25, 2024**
**Reversed in part**
**Smith, Tracy M., Judge**

Hennepin County District Court
File No. 27-CV-20-10355

Ryan R. Simatic, Biersdorf & Associates, P.A., Minneapolis, Minnesota (for appellant/cross-respondent)

Mary F. Moriarty, Hennepin County Attorney, Joseph Trojack, Faruq A. Karim, Assistant County Attorneys, Minneapolis, Minnesota (for respondent/cross-appellant)

Considered and decided by Bratvold, Presiding Judge; Smith, Tracy M., Judge; and Cleary, Judge.*

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

Appellant/cross-respondent CBS MN Properties, LLC (CBS) owns property abutting a county road in Hennepin County. As part of a project to improve the road,

_____
* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

respondent/cross-appellant Hennepin County temporarily occupied a portion of CBS's property during construction. The county also regraded the road, which made a driveway leading from the road to CBS's property steeper. CBS later obtained a permit from the county to reconstruct the driveway to reduce the slope.

In inverse-condemnation proceedings, a district court determined that the county had engaged in two takings: a temporary construction easement due to the county's occupation of a portion of CBS's property and interference with access to CBS's property due to the altered road. After a jury trial on damages, both parties moved for judgment as a matter of law (JMOL). The district court denied the parties' motions for JMOL and entered judgment for CBS, awarding damages for both takings. On appeal, both parties challenge the award of $130,000 for the interference with access. Neither party challenges the $11,300 award for the temporary construction easement.

We conclude that the district court erred by denying the county's motion for JMOL because (1) under the proper measure of damages, the verdict for interference with access is not supported by the evidence and (2) the cost to cure the interference is not compensable without proof of a diminution in market value of the property due to the interference. We therefore reverse that portion of the judgment awarding CBS $130,000 in damages for interference with access.

**FACTS**

**CBS's Property**

In 2015, CBS purchased the property that is the subject of this action. The property is adjacent to and abuts Wayzata Boulevard (also known as County Road 112) (the road)

2

in Orono. The property has access to the road by an easement to a driveway that connects the property to the road.[1] At the time of trial, the property was mostly vacant except for a daycare and a separate building foundation.

**Initial Condemnation and Road Project**

In December 2016, the county filed a condemnation petition to acquire property rights for an improvement project on the road. CBS was not included in the petition. After the project was underway, in 2017, the county temporarily occupied a portion of CBS's property adjacent to the road. The county also regraded the roadway and lowered the grade of the curb. This change required the county to reconstruct the entrance of the driveway, which is located in the county's right of way. The result was a steeper slope, which causes some cars to scrape upon entering or exiting the driveway. The following exhibit entered into evidence at trial depicts the reconstructed driveway entrance.



---

[1] A second entrance to CBS's property, located on Brown Road, was unaffected by the project.

**CBS's Mandamus Action**

In February 2017, CBS and two other landowners who were also not included in the county's initial condemnation petition began an inverse-condemnation action against the county. In August 2018, following a bench trial, the district court issued an order granting CBS's request for a writ of mandamus and ordering the county "to commence a condemnation proceeding to determine the just compensation to which [CBS is] entitled for the taking or damaging of [its] property and property rights."

**The Condemnation Petition**

The county amended its condemnation petition to add CBS's property to the proceeding. Due to other amendments not relevant here, the action ultimately became governed by the third amended condemnation petition, which states:

> [The district court] found that Hennepin County interfered with the right of reasonably convenient and suitable access to private property, physically invaded or occupied private property, interfered with the ownership, use, enjoyment and unimpeded possession of private property and interfered with private property resulting in a definite and measurable diminution in the market value of private property.

The petition specifically identifies "[a] temporary easement for construction purposes" over a described portion of land totaling 6,507 square feet.

**Condemnation Commissioners' Hearing**

In June 2020, a condemnation commissioners' hearing was held. In July 2020, the commissioners awarded CBS $11,300. In August 2020, CBS appealed the commissioners' award to district court for a jury trial on damages.

**Permit to Reconstruct the Driveway Entrance**

In February 2021—nearly four years after the county altered CBS's driveway entrance—CBS applied to the county for a permit to reconstruct the driveway entrance with a reduced slope. CBS needed a permit from the county because a portion of the driveway was in the county's right of way. CBS's application was denied. CBS reapplied in August 2021, and, in October 2021, the county issued the permit.

**Jury Trial on Damages**

A jury trial on damages was held in November 2022. In discussions with the parties during trial, and ultimately in its jury instructions, the district court clarified that the two compensable takings in this case were (1) a temporary construction easement over the section of CBS's property identified in the third amended petition and (2) interference with access caused by the county's alteration of CBS's driveway entrance.

Throughout the case, the parties disputed the appropriate measure of damages for the interference-with-access taking. CBS sought to introduce the testimony of an appraiser who applied a damages analysis that measured the rental value of the property for the period of time from when the driveway's slope was increased until the date that CBS obtained a permit to fix the slope. CBS's rental-value measure of damages was based on the theory that the interference with access was a "permanent taking" that "[b]ecame temporary" once CBS obtained a permit to reconstruct the driveway. The county sought to exclude CBS's appraiser's testimony, arguing that it was based on a taking that was not in the case.

Initially, the district court found CBS's permanent-to-temporary taking theory "illogical." But, after more consideration, the district court concluded that, while it found the "permanent to temporary taking language . . . confusing," it was "going to allow [CBS] to make that argument" because there was no precedent on a fact situation in which the government legally controlled some area that the plaintiff needed to access in order to cure the interference with access. CBS's appraiser thereafter testified regarding the permanent-to-temporary theory and his rental-value determination. He testified that, with a steeper driveway, the property was incapable of being developed for commercial purposes and that the rental value of the property during the period of time from when the driveway became steeper until the permit was issued was $387,000.

The county argued that the correct measure of damages for an interference with access is the diminution in the market value of the property due to the interference. It introduced the expert testimony of its appraiser, who testified that, based on several factors, including the sales prices of comparable properties with elevated slopes, there was no difference in the fair market value of CBS's property before and after the driveway entrance was altered to a steeper slope. The county's appraiser concluded that the increased slope of the driveway did not diminish the market value of CBS's property.

The parties also disputed the proper measure of damages when discussing jury instructions. The county asked for an instruction on damages for the temporary-construction-easement taking and an instruction on damages for the interference-with-access taking. As to interference with access, the county argued that the district court should instruct on the diminution-in-market-value measure of damages and objected to any

instruction on "temporary" interference with access. CBS, on the other hand, advocated for an instruction on "temporary takings" that would apply to interference with access and that would direct that damages are determined by rental value. CBS argued that instructing only on the diminution in value for the interference with access would not reflect the case that the district court had allowed to be tried to the jury. The district court decided to instruct on temporary and permanent takings and stated that the parties would be "free to argue temporary or permanent as it relates to the access piece."

The final jury instructions provided a measure of damages for both a "temporary taking" and a "permanent taking." For a temporary taking, the instructions explained that "damages are determined by the rental value of the property impacted for the period of time the interference is in place." For a permanent taking, the instructions explained that "damages are determined by the difference between . . . [t]he fair market value of the entire property . . . before the access rights were interfered with, and . . . [t]he fair market value of what is left after the access rights were interfered with." The instructions also provided that the jury could consider the cost to reconstruct the driveway but could award only the lesser of the cost to cure and the difference in fair market value.

The special verdict form for the jury did not address the temporary or permanent nature of, or the applicable measure of damages for, the interference with access. Question two on the special verdict form asked, "What amount of money, if any, justly compensates [CBS] for [the county's] interference of reasonable and suitable access by creating a change

7

in slope on the driveway leading to [CBS's] property?"[2] Question three asked, "What amount of money, if any, is the cost to cure/reconstruct the driveway?"

During closing arguments, the county urged the jury to find that CBS was entitled to zero dollars for the interference-with-access taking because, according to the testimony of the county's appraiser, there was no difference in the fair market value of the property before and after the county altered the driveway entrance. CBS urged the jury to find that CBS was entitled to $387,000 for the interference with access because, according to the testimony of CBS's appraiser, that amount represented the rental value of the property from the time the county altered the driveway entrance until CBS obtained the permit to reconstruct the driveway. CBS also urged the jury to find that the cost to reconstruct the driveway was $165,053.57. CBS made no argument to the jury regarding the difference in the before and after fair market value of the property.

**Verdict and Judgment**

The jury returned the special verdict form, finding that (1) $11,300 justly compensated CBS for the county's taking of a temporary construction easement, (2) $262,143 justly compensated CBS for the county's interference with access, and (3) $165,053.57 was the cost-to-cure/reconstruct the driveway.

The district court asked the parties to submit proposed judgments. CBS submitted a proposed judgment of $438,496.57—the sum of the three amounts found by the jury. The county submitted what the district court determined to be a procedurally improper

---

[2] Question one asked about the damages for the temporary construction easement, which is not at issue in this appeal.

"response" to CBS's proposed judgment. The district court issued an order for judgment. It concluded that the jury's verdict of $11,300 justly compensated CBS for the temporary construction easement. As for the remaining jury awards, it concluded that "[t]he sum of $262,143.00 awarded by the jury justly compensates [CBS] for the taking of the reasonable and suitable access regarding the driveway slope" and that "[t]he sum of $165,053.57 awarded by the jury is the cost to cure/reconstruct the driveway." But the district court went on to rule that, "[b]ecause the cost to cure is less than the damages for the access taking, only the cost to cure is awarded."

Both parties submitted motions for JMOL. The county also moved for a remittitur of damages. The district court denied both parties' JMOL motions but granted the county's motion for a remittitur. The district court remitted the cost-to-cure damages to $130,000 because the $165,053.57 awarded by the jury included construction work on a berm that was unrelated to fixing the slope of the driveway. The district court entered judgment of $11,300 for the temporary construction easement and $130,000 for the interference with access.

CBS and the county appeal, challenging the district court's award for the interference-with-access taking.

## DECISION

CBS asserts two arguments challenging the $130,000 interference-with-access award: (1) the district court erred by holding that CBS was entitled to only the lesser of the rental value of the property and the cost to cure and instead should have awarded the jury's damages verdicts for both and (2) the district court erred by remitting the jury's verdict for

the cost-to-cure damages. In its challenge to the interference-with-access award, the county makes three arguments for why the district court erred by denying its JMOL motion: (1) the evidence is not sufficient to support the jury's verdict for interference-with-access damages because that verdict is based on a different taking from that described in the condemnation petition, (2) the evidence is not sufficient to support the jury's verdict for interference-with-access damages because CBS did not introduce evidence of a diminution in value of the property based on the change to the driveway entrance, and (3) the cost to cure is not compensable because CBS did not introduce evidence of a diminution in value of the property based on the change to the driveway entrance.

The parties' arguments are interrelated. We conclude that this appeal is resolved most efficiently by determining (1) what the proper measure of damages is for the interference-with-access taking in this case and, when that measure is applied, whether the evidence supports the jury's verdict and (2) whether the cost to cure is compensable in this case. We organize our analysis accordingly.

## I.     Measure of Damages and Evidentiary Support for the Verdict

CBS's first assignment of error—that the district court erred by awarding CBS only the lesser of the rental value and the cost to cure the driveway—is premised on its contention that the proper measure of damages for the interference-with-access taking in this case is the rental value of the property plus the cost to cure the driveway. The county's challenges to the denial of its JMOL motion, on the other hand, are premised on its contention that the proper measure of damages for the interference-with-access taking is the diminution in fair market value of the property due to the interference. The proper

10

measure of damages is a legal question that appellate courts review de novo. *See Herlache v. Rucks*, 990 N.W.2d 443, 449 (Minn. 2023). The district court's award of damages is reviewed for an abuse of discretion. *See id.* at 449-50.

### A.      Measure of Damages

The government must pay just compensation for taking a person's property. U.S. Const. amend. V; Minn. Const. art. I, § 13. The county argues that the proper measure of damages for the interference-with-access taking here is the diminution in market value of the property. The county's argument is well supported by Minnesota caselaw. The Minnesota Supreme Court has consistently held that the measure of damages for an interference with the right of access to a highway is "the diminution in the market value of the property" as measured by "the difference between the market value of the property before and after suitable access has been denied." *Beer v. Minn. Power & Light Co.*, 400 N.W.2d 732, 735 (Minn. 1987) (quotation omitted); *see also State by Mondale v. Gannons Inc.*, 145 N.W.2d 321, 327 (Minn. 1966); *Hendrickson v. State*, 127 N.W.2d 165, 173 (Minn. 1964). When the cost to cure is an available remedy, the cost to cure is awarded only if it is less than the diminution in value. *See Sallden v. City of Little Falls*, 113 N.W. 884, 885 (Minn. 1907). And, in that circumstance, only the cost to cure is awarded—the cost to cure is not awarded *in addition to* any diminution in value. *See id.*

CBS attempts to distinguish this case from other interference-with-access cases by characterizing the alteration of the driveway entrance as a permanent taking that became a

"total[3] temporary taking" of the entire developable portion of CBS's property because CBS did not have the right to cure the interference with access until it obtained a permit from the county. In such circumstances, CBS argues, the proper measure of damages is the rental value of the property during the "temporary" taking, not the diminution in property value due to the interference with access.

But the fact that the cure was not immediately within the property owner's rights does not distinguish this case from other interference-with-access cases. In *Gannons*, the interference with access was caused by rerouting the property owner's immediate access to a highway in a manner that rendered access circuitous. 145 N.W.2d at 325. In *Beer*, the interference with access was the closing and rerouting of a highway. 400 N.W.2d at 734-35. Like here, the property owners in *Gannons* and *Beer* had no inherent right to cure the interference with access. Yet, in both cases, the supreme court identified the measure of damages as the difference in market value before and after suitable access was denied. *Gannons*, 145 N.W.2d at 327; *Beer*, 400 N.W.2d at 735.

---

3 In total-takings cases, the taking results in a "total deprivation of economic use." *Woodbury Place Partners v. City of Woodbury*, 492 N.W.2d 258, 261 (Minn. App. 1992), *rev. denied* (Minn. Jan. 15, 1993). CBS raises the argument that the interference-with-access taking was a "total" taking for the first time on appeal. Upon review of the record, it is clear that the only dispute before the district court was whether the interference-with-access taking was (1) permanent or (2) permanent turned temporary. CBS did not argue that the taking was "total" to the district court. Generally, an appellate court will not address questions not presented to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Further, a review of the record reveals that CBS did not make a showing that the altered driveway entrance resulted in a "total deprivation of economic use." *See Woodbury Place Partners*, 492 N.W.2d at 261. Because the district court was not presented with this issue, and because there is nothing in the record that supports CBS's characterization of the taking as total, we are not persuaded that the interference with access here was a "total taking."

Moreover, CBS has not provided any binding authority or persuasive reasoning as to why the fact that CBS had to seek, and ultimately obtained, a permit to cure the interference compels a different measure of damages. Instead, CBS relies on foreign cases that are not binding[4] and that are factually dissimilar to the case at hand because they do not involve interference-with-access takings.[5] We are therefore not persuaded that the proper measure of damages here is the rental value of the entire undeveloped portion of CBS's property rather than a diminution in market value of the property due to the interference with access.

---

[4] *See Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 861 (Minn. 1984) (explaining that decisions from foreign jurisdictions are not binding authority).

[5] *Keesling v. City of Seattle*, 324 P.2d 806, 809 (Wash. 1958), involved a temporary taking that arose from an encroaching transmission line; *Fowler Irrevocable Trust 1992-1 v. City of Boulder*, 17 P.3d 797, 799-800 (Colo. 2001), involved a temporary taking that arose from the city's use of the plaintiff's property as a construction-staging area, causing damage to the surface of the area occupied; *Primetime Hospitality, Inc. v. City of Albuquerque*, 206 P.3d 112, 114 (N.M. 2009), involved a temporary taking that arose from the city's waterlines being located on the plaintiff's property and the plaintiff's delay in construction caused by the removal of the waterlines; *Akers v. City of Oak Grove*, 246 S.W.3d 916, 919 (Mo. 2008), involved a temporary taking that arose from a city sewer line backup that caused flooding in the plaintiff's commercial apartment building; *Paddock v. Town of Durham*, 261 A.2d 438, 440 (N.H. 1970), involved a temporary taking that arose from a temporary easement.

CBS also cites one U.S. Supreme Court case, *United States v. General Motors Corp.*, 323 U.S. 373, 383-84 (1945). In *General Motors Corp.*, the government temporarily occupied a building and the issue was whether the property holder could obtain compensation not just for the government's occupancy of the building but also for the government's damage to the building's fixtures and permanent equipment. 323 U.S. at 383-84. The Supreme Court concluded that the occupancy and the physical property were distinct properties and that each provided a basis for compensation. *Id.* at 384. Unlike in *General Motors Corp.*, here, there is only one taking of one property at issue—an interference with access due to the alteration of the driveway entrance. *General Motors Corp.* does not provide authority to apply a rental-value measure of damages to the interference with access rather than the traditional diminution-in-value measure.

## B. Evidentiary Support for the Verdict

With the correct measure of damages established, we turn to the county's argument that the district court erred by denying its JMOL motion because the jury's verdict awarding damages for interference with access is unsupported by any evidence of a diminution in value. "JMOL is appropriate when a jury verdict has no reasonable support in fact or is contrary to law." *JEM Acres, LLC v. Bruno*, 764 N.W.2d 77, 81 (Minn. App. 2009). Appellate courts review the denial of a motion for JMOL de novo. *Vermillion State Bank v. Tennis Sanitation, LLC*, 969 N.W.2d 610, 618 (Minn. 2022). The reviewing court views the evidence in the light most favorable to the prevailing party. *Id.* An appellate court will affirm the denial of a motion for JMOL "unless no reasonable theory supports the verdict." *Id.* at 618-19.

The county argues that the jury's verdict of $262,143 for interference with access is unsupported by the evidence. The county asserts that CBS's appraiser testified only to the rental value of the property and that CBS introduced no evidence showing a difference in market value of the property before and after the taking. The only evidence of the before and after market value of the property, the county asserts, was its appraiser's testimony that the change in driveway slope did not affect the property's market value.

CBS makes no argument that the evidence supports a verdict based on a diminution in market value. It argues only that it is entitled to rental-value damages—a theory of damages that we have rejected. Moreover, in our review of the record, we discern no evidentiary basis for the jury's verdict based on a diminution in value. Though the district court instructed the jury on two measures of damages, including a diminution in property

14

value, CBS did not put in evidence of a change in value. CBS's appraiser acknowledged that he did not use the "before and after method." He explained that a before-and-after analysis would have "overstate[d] the damages" because the interference with access changed the best use of the property from commercial to residential and using the before-and-after approach in that circumstance would misleadingly inflate the damages. But, leaving aside whether the premise of the appraiser's reasoning is accurate, the expert still did not testify to what a before-and-after analysis would actually show. Mere assertions are not enough to support an opinion on diminution in value. *See Alevizos v. Metro. Airports Comm'n*, 317 N.W.2d 352, 359 (Minn. 1982) (agreeing that "an opinion on diminution, to be persuasive to the trier of fact, should ordinarily be substantiated by some kind of market studies or other documentation" and that "[m]ere assertions are not enough"); *Sallden*, 113 N.W. at 885 (reversing where the only evidence of damages was the plaintiff's husband's testimony that "'to the best of his information and belief' the damage was $1,000"). And, as the county argues, the only evidence regarding the before and after market value of the property is the county's evidence that the difference in value was zero.[6]

On this record, we agree with the county that the district court erred by denying its motion for JMOL because the jury's verdict awarding $262,143 is unsupported by the evidence.[7]

---

[6] CBS contends that a taking of property rights cannot result in an award of $0. But CBS has the burden of proving damages. *See State by Lord v. Pearson*, 110 N.W.2d 206, 215 (Minn. 1961) (observing that, in a condemnation action, "[t]he owner has the burden of proving and establishing . . . damages").

[7] Because we conclude that the evidence is insufficient to sustain the jury's verdict awarding damages for the interference-with-access taking on this basis, we need not

## II.    Cost-to-Cure Damages

We turn to the cost-to-cure damages. In its judgment awarding $130,000 in damages for the interference-with-access taking, the district court awarded the lesser of the jury's verdict based on the rental value of the property and the jury's verdict for the cost to cure. The county contends that CBS is not entitled to damages for the cost to cure when there was no showing of a diminution in market value of the property and that the district court therefore erred by denying its JMOL motion on this basis. We agree.

The cost to cure may be awarded for an interference with access "only when it [is] shown to be less than the difference in value" of the property before and after the taking. *Sallden*, 113 N.W. at 885; *see also Bull. Publ'g Corp. v. City of Cottage Grove*, 379 N.W.2d 685, 687-88 (Minn. App. 1986) (concluding that the plaintiff "failed to make its case regarding access damages" when its experts "did not indicate that cost-to-cure was less than the market value difference"). In *Sallden*, the property owner obtained a verdict based on the grading of the abutting road. 113 N.W. at 884. The only evidence of damages was the plaintiff's husband's testimony that "'to the best of his information and belief' the damage was $1,000." *Id.* at 885. The Minnesota Supreme Court observed that the plaintiff made no attempt to show the value of the property before and after the taking and concluded that, "in the absence of some evidence in that direction," the cost to cure could not be recovered. *Id.*

---

address the county's alternative argument that the district court erred by denying its JMOL motion because the jury awarded damages for a different taking from that included in the condemnation petition.

As in *Sallden*, CBS did not produce evidence of the before and after value of the property. The only evidence of the before and after value of the property is the county's evidence that the difference in value was zero. Without evidence of a diminution in value, the district court could not determine that the cost to cure was less than the diminution in value. The cost to cure is therefore not compensable. The district court erred by denying the county's motion for JMOL on this basis.[8]

In conclusion, the proper measure of damages for the interference with access caused by the increased slope of the driveway to CBS's property is the diminution in market value of CBS's property as measured by the before and after value of the property. The record contains no evidence that the market value of CBS's property decreased due to the interference with access. The absence of such evidence precludes a damages award for interference with access, including an award based on the cost to cure the interference. As a result, we reverse that portion of the district court's judgment awarding CBS $130,000 in damages.

**Reversed in part.**

---

[8] Because we conclude that the cost to cure was not compensable, we need not address CBS's contention that the district court erred by remitting the jury's verdict for the cost to cure the driveway.